Tatyana **SERAFIMOVICH,**
**Petitioner–Appellant,**

v.

John **ASHCROFT, Attorney General,**
**Respondent–Appellee.**

**Docket No. 03–40412.**

United States Court of Appeals,
Second Circuit.

Argued: April 19, 2006.

Decided: July 17, 2006.

---

Irina Kogan, Law Office of Irina Kogan, Esq., Brooklyn, NY, for Petitioner–Appellant.

Aixa Maldonado–Quinones (Thomas P. Colantuono, on the brief), United States Attorney's Office for the District of New Hampshire, Concord, NH, for Respondent–Appellee.

Before JACOBS and B.D. PARKER, Circuit Judges; OBERDORFER,* District Judge.

LOUIS F. OBERDORFER, District Judge.

Tatyana Serafimovich applied to the United States Immigration and Naturalization Service for withholding of her deportation to Belarus. The controlling statute requires a petitioner to establish by a clear probability that her "life or freedom would be threatened [upon deportation] ... because of [her] ... political opinion." 8 U.S.C. § 1231(b)(3)(A). An immigration judge denied Serafimovich's application, and the Board of Immigration Appeals (the "Board") summarily affirmed. The immigration judge concluded that her life or freedom would not be threatened; he did so at least in part by coupling (1) the fact that she had not suffered past persecution in Belarus with (2) his finding that "[t]here's nothing in the record to establish that President [Lukashenko] was any[ ]more authoritarian in the year 2000 [when Serafimovich applied for withholding of deportation] than he was [in 1995] when [she] first entered the United States." Nov. 29, 2001 Oral Decision Tr. at 9–10, 19–20 (JA 89–90, 99–100). In fact, however, the "Country Reports" on Belarus, prepared by the United States Department of State, for the years 1996,

1997, 1998, 1999, and 2000 each note an increasingly authoritarian President Lukashenko. *See* below at subsection II(B)(1). In light of this evidence in the record that was not addressed by the immigration judge (and, by extension, the Board) and that has an obvious bearing on a central and potentially outcome determinative finding, we (1) grant Serafimovich's petition for review, (2) vacate the denial by the Board of her request for withholding of deportation, and (3) remand with direction that the decision of the immigration judge be vacated and the case be further remanded to that judge for reconsideration of the record. We also direct that, in light of the passage of nearly five years since the decision of the immigration judge, the record on remand be reopened for further development on the issue of withholding of deportation.

## I. BACKGROUND

### A. Facts.

Serafimovich, alien no. A 78–221–003, is a citizen of Belarus. As a university student in Belarus, she criticized the government of President Aleksandr Lukashenko and otherwise worked on behalf of an opposition party, the Belarusian Popular Front. According to her testimony (which the immigration judge neither expressly adopted nor rejected), her political activities led to two encounters (November 1994 and January 1995) with the Belarusian KGB, a state police organization. In both encounters, the KGB representative(s) expressed disapproval of her political activities; in the second encounter, the KGB representatives threatened to imprison her.

---

* The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

In March 1995, twenty-year old Serafimovich left Belarus and entered the United States on a three-month student visa, to expire June 14, 1995. According to her testimony, she intended to study in the United States for approximately six months (by extending her student visa) before returning to Belarus, where she hoped the KGB would have lost interest in her.

In 1996, however, Serafimovich (still in the United States) decided to stay; she testified that she decided to do so for a number of reasons, including her fear of persecution in Belarus and the fact that about that time she and her first husband, Leonid Remesnitskiy, decided to marry. After their marriage, Remesnitskiy apparently applied (or attempted to apply) on behalf of Serafimovich for legal immigrant status for her. He did not receive a response to that petition. Thereafter, Remesnitskiy and Serafimovich divorced. She has re-married and has a U.S. born child.

While in the United States, Serafimovich has attended several demonstrations regarding political conditions in Belarus. She testified that Belarus authorities have videotaped at least some of those demonstrations. Meanwhile, she further testified that her parents received visits from a Belarus police agency in 1997, 1998, and 1999 (visits in which the police asked about Serafimovich), that her father was fired from his job in 1999 in connection with either his or her political activities, that in 2000 her parents received a Belarus subpoena addressed to her in connection with her political activities, that her parents' phone is tapped, and that her mail to and from her parents disappears.[1]

## B. Procedural History.

### 1. Immigration Judge.

On April 17, 2000, Serafimovich applied to the United States Immigration and Naturalization Service for political asylum, withholding of deportation, and protection under the Convention Against Torture. After hearings, Immigration Judge Robert D. Weisel issued, on November 29, 2001, an oral decision (1) pretermitting as untimely her application for political asylum and (2) denying her requests for withholding of deportation and protection under the Convention Against Torture.

### 2. Board of Immigration Appeals.

Serafimovich appealed to the Board of Immigration Appeals; on July 29, 2003, the Board, in a single-page ruling, affirmed the decision of the immigration judge and adopted his reasoning.

### 3. Second Circuit.

Serafimovich here petitions for review only of the denial of her request for withholding of deportation.

---

1. The record contains evidence contradicting the testimony of Serafimovich regarding the 2000 subpoena, particularly a diplomatic report recording that Belarus authorities have denied the subpoena's authenticity. The immigration judge accorded the diplomatic report "very little weight." Nov. 29, 2001 Oral Decision Tr. at 19 (JA 99). He did, however, express great skepticism as to Serafimovich's testimony about the 2000 subpoena and the 1997, 1998, and 1999 questioning of her parents:

[I]t is implausible, considering the mild reaction of [Belarus] officials to her activities in the early 1990's, that over half a decade later, the [Belarus] State Security Police would be interested in subpoenaing her for questioning. And that this questioning would have commenced in 1997.

*Id.* at 19 (JA 99). As further explained below at subsection II(B)(1), however, the skepticism of the immigration judge apparently depended, at least in part, on his erroneous finding of a lack of evidence of more authoritarian conditions in Belarus.

## II. ANALYSIS

The immigration judge and the Board of Immigration Appeals overlooked record evidence that has an obvious bearing on a potentially outcome-determinative finding central to the ruling below.

### A. Standard of Review and Applicable Law.

This court reviews *de novo* both the legal conclusions of the Board of Immigration Appeals and its application of those principles to particular facts. *See Ai Feng Yuan v. United States Dep't of Justice*, 416 F.3d 192, 195 (2d Cir.2005) (legal conclusions); *Secaida–Rosales v. Immigration & Naturalization Serv.*, 331 F.3d 297, 307 (2d Cir.2003) (application of legal principles). Factual findings are reviewed for "substantial evidence"; the court will rely on such a finding so long as it is supported by "reasonable, substantial, and probative evidence." *Ai Feng Yuan*, 416 F.3d at 195 (quotation marks omitted); *accord Secaida-Rosales*, 331 F.3d at 307.

Here, the Board summarily affirmed the decision of the immigration judge, thereby presumptively adopting his findings and analysis. *See Yu Sheng Zhang v. United States Dep't of Justice*, 362 F.3d 155, 158–59 (2d Cir.2004) (per curiam); *Secaida-Rosales*, 331 F.3d at 305–06. Accordingly, we review the findings and analysis of the immigration judge (imputed to the Board). *See Yu Sheng Zhang*, 362 F.3d at 158–59 & n. 2; *Secaida–Rosales*, 331 F.3d at 305–06.

 Withholding of deportation is only available where the petitioner demonstrates that her "life or freedom would be threatened in [the country to which she is to be removed] because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b); *see also Ivanishvili v. United States Dep't of Justice*, 433 F.3d 332, 339 (2d Cir.2006). Where the petitioner has established that she suffered past persecution on account of one of the protected grounds, eligibility for withholding of removal is presumed, subject to rebuttal. *See* 8 C.F.R. § 208.16(b)(1); *Ivanishvili*, 433 F.3d at 339. Alternatively, the petitioner must establish by a "clear probability"—i.e., "more likely than not"—that the described persecution will occur. *Ivanishvili*, 433 F.3d at 339 (quotation marks omitted). The petitioner must demonstrate both an actual fear of persecution and that the fear is objectively reasonable. *See Chun Gao v. Gonzales*, 424 F.3d 122, 128 (2d Cir.2005).

### B. Whether the Immigration Judge and Board of Immigration Appeals Erred in Denying Serafimovich's Application for Withholding of Deportation?

#### 1. The Immigration Judge and Board of Immigration Appeals Misapprehended the Record and Relied on That Misapprehension.

 The decision of the immigration judge (and, by extension, the Board of Immigration Appeals) contains several errors. Most prominently, that decision largely depends on the conclusion that Serafimovich does not face a clear probability of persecution because (1) she did not suffer persecution while in Belarus[2]

---

**2.** Serafimovich concedes that the harassment that she apparently experienced in Belarus does not amount to past persecution for purposes of withholding of removal. *See* Appellant's Br. at 12 ("The petitioner respectfully agrees that she did not suffer past persecution in Belarus."); *cf. Diab v. Ashcroft*, 397 F.3d 35, 39 (1st Cir.2005) (demonstration of threat to life or freedom requires proof of more than "unpleasantness, harassment, and even basic

and (2) "[t]here's nothing in the record to establish that President [Lukashenko] was any[ ]more authoritarian in the year 2000 [when Serafimovich applied for withholding of deportation] than he was [in 1995] when [she] first entered the United States." Nov. 29, 2001 Oral Decision Tr. at 9–10, 19–20 (JA 89–90, 99–100).

The quoted finding, however, is not supported by substantial evidence and is, in fact, demonstrably incorrect. Annual United States Department of State "Country Reports" recount that, between 1996 and 2000, the civil rights climate in Belarus deteriorated and President Lukashenko became increasingly authoritarian. The 1996 Report summarized: "The [Belarus] Government's human rights record worsened significantly as [President Lukashenko] continued to lead Belarus back toward Soviet-era authoritarian practices." Feb.1997 U.S. Dep't of State Country Reports on Human Rights Practices for 1996 at 849 (JA 255). According to the 1997 Report, the human rights record of the Lukashenko regime "again worsened significantly." Mar.1998 U.S. Dep't of State Country Reports on Human Rights Practices for 1997 at 977 (JA 267). The 1998 Report stated: "The Government's human rights record again worsened significantly as [President Lukashenko] sought to neutralize domestic opposition. . . ." Apr. 1999 U.S. Dep't of State Country Reports on Human Rights Practices for 1998, vol. II at 1142 (JA 284). In 1999, the human rights record again "worsened significantly." Apr.2000 U.S. Dep't of State Country Reports on Human Rights Practices for 1999, vol. II at 1391 (JA 303). And the 2000 Report concluded that the human rights record of the Lukashenko government "was very poor and worsened significantly in many areas"—a conclusion that it

supported by noting, among other developments, the following:

> Under Lukashenko's direction, the presidential guard—initially created to protect senior officials—continued to act against . . . [his] political enemies with no judicial or legislative oversight.
>
> . . . .
>
> . . . . Lukashenko took severe measures to neutralize political opponents. The authorities did not undertake serious efforts to account for the disappearances that occurred in the previous year of well-known opposition political figures. Security forces continued to beat political opponents and detainees. . . . Security forces arbitrarily arrested and detained citizens, and the number of apparently politically motivated arrests increased, although many of those arrested soon were released. Prolonged detention and delays in trials were common and also occurred in a number of politically sensitive cases. The security services infringed on citizens' privacy rights and monitored closely the activities of opposition politicians and other segments of the population. Severe restrictions on freedom of speech, the press, and peaceful assembly continued, and the authorities did not respect freedom of association. The authorities continued to impose limits on freedom of religion and restricted freedom of movement.

Feb.2001 U.S. Dep't of State Country Reports on Human Rights Practices for 2000 at 1 (JA 327).

The immigration judge (and, by extension, the Board) assumed that the fact that Serafimovich was not persecuted while in

suffering") (quotation marks omitted); *Ahmed v. Ashcroft,* 348 F.3d 611, 616 (7th Cir.2003)

("unfulfilled threats are generally insufficient to establish past persecution").

Belarus in 1994 and 1995 precluded a finding that she now faced the prospect of such persecution—an assumption that rested on the underlying, incorrect finding that no evidence suggested worsened conditions. *See* Nov. 29, 2001 Oral Decision Tr. at 19–20 (JA 99–100). This reliance leaves us unsure how the immigration judge or Board would resolve the request by Serafimovich for withholding of deportation if either considered and weighed the record of increasingly authoritarian rule in Belarus. *Cf. Yan Chen v. Gonzales*, 417 F.3d 268, 274–75 (2d Cir.2005) (vacating Board decision where it failed to consider country report).

The decision of the immigration judge contains other errors as well. The immigration judge stated:

> There is *no* evidence in the record that members of the [Belarus] government or it[ ]s state security services ever sought to stop [Serafimovich] from engaging in political activity.

Nov. 29, 2001 Oral Decision Tr. at 17 (JA 97). He also stated:

> There's no evidence that any member of the [Belarus] State Security Service ever attempted to suppress any belief or characteristic that [Serafimovich] had by way of direct and concerted action.

*Id.* The testimony of Serafimovich, however, provides ample evidence from which a reasonable fact finder could determine that Belarus authorities, acting for example through the Belarusian KGB, did intend to prevent her from engaging in certain political activities and did intend to suppress her political beliefs. *See, e.g.*, Nov. 29, 2001 Hr'g Tr. at 73–89 (JA 181–97) (recounting, among other things, her alleged 1994 and 1995 encounters with the KGB); *see also* Apr. 14, 2000 Aff. of Serafimovich at ¶¶ 12–14 (JA 761–62) (same).

The immigration judge also concluded, incorrectly, that the record contains "no evidence" that Serafimovich, while in the United States, ever acted to become known "individually as a political activist by any governmental operatives in [Belarus]." Nov. 29, 2001 Oral Decision Tr. at 18–19 (JA 98–99). The record contains her testimony (not rejected by the immigration judge or Board) that Belarus authorities videotaped demonstrations in which she has participated while in the United States. And it contains her testimony regarding (1) Belarus government authorities questioning her parents in 1997, 1998, and 1999 about her, (2) her parents' receipt of a 2000 subpoena addressed to her, and (3) the tapping of her parents' phone and interception of mail. While the immigration judge did term at least some of this latter testimony "implausible," *id.* at 19–20 (JA 99–100), this conclusion follows his earlier, underlying, and incorrect finding that the record contains no evidence of worsened conditions in Belarus.

We conclude that the immigration judge and, by extension, the Board relied on their misapprehension of the record in denying the request by Serafimovich for withholding of removal.

### 2. The Appropriate Remedy.

 The government argues that, even if the immigration judge and the Board misapprehended the record, their denial of withholding can nonetheless be affirmed on a finding that Serafimovich's fear of persecution in Belarus, even if objectively reasonable, is not genuine. *See* Appellee's Br. at 15–19; *Chun Gao v. Gonzales*, 424 F.3d 122, 128 (2d Cir.2005) (threat to life or freedom, for withholding of removal purposes, requires proof of a fear of persecution that is both actual and objectively reasonable). The government,

however, identifies no such finding in the decision of either the immigration judge or the Board, nor have we located one.[3] Serafimovich, for her part, testified that "I'm afraid to return back to my home .... [b]ecause of my political beliefs and political views." Nov. 29, 2001 Hr'g Tr. at 73–74 (JA 181–82); *see also* Apr. 14, 2000 Aff. of Serafimovich at ¶¶ 1–3, 18 (JA 759, 763). While the government cites record evidence on which the immigration judge or Board arguably could have relied to discredit her testimony, the fact remains that they did not do so. Accordingly, we decline to affirm on this ground. *Cf. Yu Sheng Zhang v. United States Dep't of Justice*, 362 F.3d 155, 159 (2d Cir.2004) ("Because we may not affirm the [Board] on grounds that it did not explicitly adopt, our review [in a case, such as this, where the immigration judge's findings and analysis are imputed to the Board] will necessarily be confined to the reasoning of the [immigration judge].") (quotation marks omitted).

Serafimovich, in turn, invites us to decide *de novo* that she has demonstrated a clear probability that her life or freedom would be threatened upon her deportation to Belarus. We decline to do so because the record does not compel that conclusion; we leave to the immigration judge the initial decision on that ultimate question. *See Tian–Yong Chen v. United States Immigration & Naturalization Serv.*, 359 F.3d 121, 129–30 (2d Cir.2004); *cf. Abankwah v. Immigration & Naturalization Serv.*, 185 F.3d 18 (2d Cir.1999). Also, we direct that the immigration judge

re-open the record to allow the parties an opportunity to update it, given the passage of nearly five years since he initially ruled in this case. *See Tian Yong Chen*, 359 F.3d at 129–30; *Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 154–57 (2d Cir.2003).

### III. CONCLUSION

For the foregoing reasons, we grant Serafimovich's petition for review, vacate the decision of the Board, and remand with direction that the decision of the immigration judge be vacated and the case be further remanded to that judge for reconsideration in the first instance, after affording the parties an opportunity for further record development.

---

**3.** The closest to such a finding is the following statement: "[I]t's only because the marriage in Vegas [to Remesnitskiy] didn't work out that you applied for asylum. That's the only reason that you applied for asylum." Nov. 29, 2001 Hr'g Tr. at 136 (JA 245). That conclusion, which we take to constitute a finding of fact, does not amount to a finding

that Serafimovich lacks an actual fear of persecution in Belarus. Indeed, it may do no more than emphasize the unremarkable fact that, absent the divorce of Serafimovich and Remesnitskiy, Serafimovich likely would not have had occasion to rely on an application for political asylum.