**Ai Feng YUAN, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Respondent.**

**Song Qi Huang, Petitioner,**

v.

**United States Department of Justice, Respondent.**

**Docket Nos. 02–4632–AG, 02–4635–AG.**

United States Court of Appeals, Second Circuit.

Submitted May 18, 2005.

Decided July 26, 2005.

---

Bruno Joseph Bembi, Hempstead, NY, for Petitioners.

Debra W. Yang, United States Attorney for the Central District of California, Abraham C. Meltzer, Assistant United States Attorney, Leon W. Weidman, Chief, Civil Division, Gary Plessman, Chief, Civil Fraud Division, United States Attorney, Central District of California, Los Angeles, CA, for Respondent.

Before: MESKILL, NEWMAN and CABRANES, Circuit Judges.

MESKILL, Circuit Judge.

By law, immigrants persecuted under coercive family planning policies in their native countries may seek asylum in the United States. So may their spouses. These cases require us to determine whether the parents and parents-in-law of people so persecuted may likewise seek asylum. We hold that they may not: A parent or parent-in-law of a person subject to a coercive family planning policy is not for that reason eligible for asylum. We further hold that petitioners have not demonstrated either that they have suffered past persecution or have a well-founded fear of future persecution in connection with their opposition to The People's Republic of China's one-family, one-child policy. Accordingly, we deny the petitions for review.

I.

Ai Feng Yuan and Song Qi Huang petition for review of a decision of the Board of Immigration Appeals (BIA) affirming the denial of their applications for political asylum and other relief. Feng and Huang are, respectively, wife and husband, and the facts underlying their asylum applications are substantially identical. We therefore heard and now decide their petitions together.

Huang was paroled into the United States on December 31, 1991; his parole was subsequently revoked, at which time he became removable. Feng entered the United States on a visitor's visa on June 2, 1993, but remained illegally past the visa's expiration. In response to Notices to Ap-

pear dated March 4, 1999 (Huang), and July 13, 2000 (Feng), petitioners admitted their removability but sought asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT).

Petitioners argue that they are entitled to political asylum on account of China's one-family, one-child population control program. Although neither petitioner was directly subject to the policy, their two daughters-in-law were. According to Feng's unrebutted testimony before the Immigration Judge (IJ)—which the IJ found credible—the couple's eldest son's wife had an intrauterine device (IUD) involuntarily inserted in September 1991. The daughter-in-law resisted this procedure in several ways: first, she hid from family planning officials; later, she secretly removed the IUD due to uncontrolled bleeding; and finally, she escaped to another province to avoid required IUD checkups. She was later forced to take birth control pills when family planning officials discovered the IUD's removal in February 1992. Feng also testified that the couple's youngest son's wife was forced to undergo an abortion, apparently in February 1993.[1]

Their daughters-in-law's (understandable) reluctance to comply with the family planning authorities carried consequences for petitioners as well. In September 1991, while the first daughter-in-law was resisting having the IUD inserted, officials searched for her at petitioners' home. Not finding her, they broke the furniture in petitioners' house and threatened to arrest Huang. Later that same month, Huang was fired from his state job because of his eldest son's and daughter-in-law's resistance to the family planning policy. Two

---

**1.** Petitioners' eldest son and his wife have been in the United States since at least 1996, and have received political asylum. Petitioners' younger son and his wife remain in Chi-

na, where they have a daughter, and have reportedly not been subjected to any further persecution.

weeks later, on October 11, 1991, Huang fled China.

Feng, meanwhile, remained. In February 1992, when her first daughter-in-law failed to attend a checkup to ensure that the IUD was in place, Feng was detained. She was held by family planning officials for three days and only released when the daughter-in-law reported for her checkup.[2] Feng was again detained for two days in September 1992 when her daughter-in-law failed to report for another checkup. As was the case with the February 1992 detention, Feng was not released until the daughter-in-law reported to the family planning officials.

In June 1993—almost a year and a half after her last detention, but just months after her second daughter-in-law's forced abortion—Feng emigrated to the United States on a B–1 visitor visa.

At a hearing on July 24, 2001, an IJ denied Feng and Huang's consolidated applications for asylum and other relief. While the IJ made a favorable credibility determination (except, as noted, with respect to Feng's claim that she was beaten while in custody), she found that petitioners did not have a well-founded fear of future persecution, and that petitioners' experiences in China did not constitute past persecution. The IJ explained that "the present law [does not] contemplate[ ] that the parents of people who are forced to undergo abortions or sterilizations derive status as refugees." The IJ then explained that, in her view, petitioners' eligibility for asylum turned on whether the repercussions of their daughter-in-law's refusal to comply with the family planning officials—the ransacking of their house, the detentions of Feng, and the termination of Huang's employment—con-

stituted persecution on account of their opposition to China's family planning policy. But the IJ found that, with respect to Feng, "two brief detentions do not constitute past persecution," and that with respect to Huang, neither did his firing. The IJ also concluded that petitioners did not have a well-founded fear of future persecution because their eldest son and daughter-in-law were no longer in China, having been granted asylum in America, and because a great deal of time had elapsed—approximately twelve and fourteen years for Feng and Huang, respectively—since petitioners were last in China. With respect to their CAT claim, the IJ found that there was no evidence to support petitioners' claim that they would be tortured for illegally exiting China.

Petitioners timely appealed to the BIA, which affirmed without opinion on September 24, 2002. These petitions for review followed.

## II.

 Because the BIA affirmed on the IJ's opinion, we review the IJ's decision directly. *See Secaida–Rosales v. INS*, 331 F.3d 297, 305 (2d Cir.2003). The IJ's factual determinations must be affirmed if they are supported by "reasonable, substantial, and probative evidence in the record." *Id.* at 307 (internal quotation marks omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (substantial evidence involves only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks omitted). We review the IJ's legal conclusions, as always, *de novo. See Liao v. United States Dep't of Justice*, 293 F.3d 61, 66 (2d Cir.2002).

---

2. Feng testified that she was beaten during this detention, but the IJ specifically rejected that claim as incredible. , For the reasons stated by the IJ, we believe that conclusion to

have been supported by substantial evidence. *See generally Dong v. Ashcroft*, 406 F.3d 110 (2d Cir.2005) (per curiam).

### III.

■ "To establish eligibility for asylum, a petitioner must show that he is a 'refugee' within the meaning of the Immigration and Nationality Act, *i.e.,* that he has suffered past persecution on account of 'race, religion, nationality, membership in a particular social group, or political opinion,' or that he has a well-founded fear of future persecution on these grounds." *Qiu v. Ashcroft,* 329 F.3d 140, 148 (2d Cir.2003) (quoting 8 U.S.C. § 1101(a)(42)). A 1996 amendment to that Act makes it clear that being subject to forced sterilization or abortion qualifies a petitioner as a "refugee." *See Zhao v. United States Dep't of Justice,* 265 F.3d 83, 92 (2d·Cir. 2001). To be precise, the statute provides, in pertinent part:

> For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure *or for other resistance to a coercive population control program,* shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42) (emphasis added). Although the statute does not explicitly so provide, protection under this provision has also been afforded to the spouses of people subject to forced abortions, involuntary sterilization, or otherwise directly subjected to coercive family planning policies. *See Zhang v. INS,* 386 F.3d 66, 72–73 (2d Cir.2004).

Feng and Huang's petition therefore raises two closely related questions. *First,* are the parents or parents-in-law of people persecuted under coercive family planning policies likewise deemed political refugees, *per se?* And *second,* if not, are parents or parents-in-law part of the class of people who are eligible for asylum for providing "other resistance to a coercive population control program" (and, if so, have petitioners provided "other resistance")?

### A.

■ The first question—whether the parents and parents-in-law of people persecuted by coercive family planning policies are *per se* political refugees—is arguably the more important one.

As usual, we begin with the text of the relevant statute, *see, e.g., Pacheco v. Serendensky,* 393 F.3d 348, 354 (2d Cir.2004), which in this case is relatively unhelpful. The 1996 amendment specifies that protection is afforded to any "person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program." 8 U.S.C. § 1101(a)(42)(B). By its plain language, the law would seem to extend refugee status only to actual victims of persecution—for example, a woman who was "forced to abort a pregnancy," but not her husband.

■ But, as noted, we have held that spouses of people actually subject to persecution under coercive family planning policies are *per se* eligible for asylum.[3] *See*

---

**3.** Actually, this overstates the matter slightly. An immigrant who seeks asylum under the 1996 amendment may still be denied relief if the government can demonstrate changed country conditions that negate her fear of future persecution. *See Qiu v. Ashcroft,* 329 F.3d 140, 148 (2d Cir.2003). It is more accu-

*Zhang,* 386 F.3d at 73. In doing so, however, we did not explain why. Rather, we followed the lead of the BIA, *see id.* (following *In re C–Y–Z–,* 21 I. & N. Dec. 915 (BIA 1997) (in banc)), affording the INS the typical deference it deserves when interpreting its own regulations. *See generally Diallo v. INS,* 232 F.3d 279, 285 (2d Cir.2000) (holding that the BIA's interpretation of INS regulations is entitled to *Chevron* deference). But the BIA, in turn, had simply relied on the concession of the INS, *see C–Y–Z–,* 21 I. & N. Dec. at 918, which itself apparently never explained why it took that position, *see id.* at 928 (Fillpu, Board Member, concurring in part and dissenting in part).

The INS has not weighed in on the issue before us now and the respondent, in urging us to deny the petitions, merely notes that "no reported case has extended derivative refugee status beyond the spouse of the person who suffered forced abortion or sterilization." Thus, we are put in the position of examining a statute whose plain text is in tension with the construction that the BIA has given it, and then extrapolating the statute's application to new cases.

Ultimately, we are guided by that canon of statutory construction that requires us to reconcile a statute's plain language with its purpose. *See Bob Jones Univ. v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983). The purpose and effect of the 1996 amendment is to grant refugee status to anyone whose "human rights" are threatened by a coercive family planning policy. *Zhao,* 265 F.3d at 92 (citing *Coercive Population Control in China: Hearings Before the Subcomm. on Int'l Operations & Human Rights of the*

*House Comm. on Int'l Relations,* 104th Cong. (1995)). In this case, the right at issue is the right to procreate, *cf. Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535, 536, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (referring to "the right to have offspring" as "a right which is basic to the perpetuation of a race" and "one of the basic civil rights of man"), a right that is, in effect, shared by a married couple in the sense that when it is denied to one, it is denied to both. Consistent with this purpose, we have extended refugee status to the spouses of men and women subject to forced sterilization and abortions. *See Zhang,* 386 F.3d at 73.[4]

Similarly, the persecution of a couple's child or child's spouse does not impinge upon the parents' or parents-in-law's right to procreate. While petitioners' contention is not without intuitive appeal—"one family, one child" logically entails, after all, "one family, one grandchild"—it finds support in neither the text of the statute nor in the more expansive reading that the INS has afforded it, consonant with its purpose. Accordingly, we hold that the parents and in-laws of people persecuted under a coercive family planning policy are not *per se* eligible for political asylum.

### B.

We turn, then, to the remaining question: whether parents or parents-in-law are within the class of people who may seek asylum if they have provided "other resistance to a coercive population control program." 8 U.S.C. § 1101(a)(42)(B).

---

rate to say that the spouse of a person subjected to forced abortion or sterilization steps into the shoes of the person so persecuted. *Id.*

**4.** We note that other circuits have not extended protection to a woman's unmarried male

partner. *See, e.g., Chen v. Ashcroft,* 381 F.3d 221, 222 (3d Cir.2004); *Zhang v. Ashcroft,* 395 F.3d 531, 531 (5th Cir.2004). Our Circuit has not yet definitively addressed such a situation.

We note at the outset that the BIA has not yet interpreted this element of the statute, to the extent that it might apply here. It is our usual practice to withhold our own definitive statutory interpretation until the BIA has passed on a question. We will adhere to that practice in this case because, fortunately, we do not need to decide whether the "other resistance" clause of 8 U.S.C. § 1101(a)(42)(B) extends beyond actual victims or targets of coercive population control policies to decide these petitions. Even assuming that petitioners could avail themselves of the "other resistance" provision as a matter of law—a question on which we intimate no opinion—as a matter of fact they have not demonstrated their entitlement to relief.

Ultimately, we agree with the IJ that petitioners neither clearly evinced their opposition to the policy, nor suffered persecution. The record nowhere reflects either petitioner's opposition to the policy or any actual resistance to its enforcement. There was no evidence, for example, that petitioners at any point even assisted their daughter-in-law in evading the family planning officials. In fact, when detained, Feng twice called for her daughter-in-law to report to those officials.

Similarly, we believe that the IJ's conclusion that neither petitioner suffered persecution is supported by substantial evidence. Feng was detained only briefly, and was not mistreated while in custody. *See, e.g., Eusebio v. Ashcroft*, 361 F.3d 1088, 1091 (8th Cir.2004) ("It is a well-established principle that minor beatings and brief detention, even detentions lasting two or three days, do not amount to political persecution."). *See generally Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir.1995) ("[P]ersecution is an extreme concept that does not include every sort of

treatment our society regards as offensive.") (internal quotation marks omitted). And although Huang lost his job, there is no evidence that he was barred from getting another position, or even that he looked.

All of this is compounded by petitioners' having been away from China for a dozen years and their daughter-in-law's current residence in America. Because all of the actions taken against petitioners were efforts to enforce the daughter-in-law's compliance with the family planning policy, it is reasonable to conclude that it is highly unlikely that petitioners would be subject to any adverse action if they were returned. Indeed, the Chinese government granted Feng a passport in 1993, indicating that it holds no grudge against her. Petitioners therefore have neither suffered past persecution, nor have a well-founded fear of future persecution, and thus are not eligible for asylum.[5]

### IV.

For the reasons just given, we hold that the parents and in-laws of people persecuted under coercive family planning policies are not *per se* eligible for political asylum. Furthermore, because substantial evidence in the record supports the finding of the IJ that the petitioners here neither meaningfully resisted China's family planning policy nor experienced persecution as that term is understood in our case law, they are not entitled to relief under any plausible construction of the "other resistance" clause of 8 U.S.C. § 1101(a)(42). Accordingly, the petitions for review are denied.

---

**5.** Similarly, and for the additional reasons given by the IJ, petitioners have not shown that it is more likely than not that petitioners will be tortured upon their return to China. *See* 8 C.F.R. § 1208.16. We therefore affirm the denial of petitioners' CAT claim.