**Kaiser RAFIQ, Petitioner,**

v.

**Alberto GONZALES, Attorney General of The United States of America, Respondent.**

**Docket No. 05–2079–AG.**

United States Court of Appeals, Second Circuit.

Argued: June 2, 2006.

Decided July 24, 2006.\*

---

\* This opinion was originally decided by summary order. It is now published as a per curiam opinion at the request of one of the parties. No substantive change has been made to the order

H. Raymond Fasano, Madeo & Fasano, New York, N.Y., for Petitioner.

Toi Denise Houston, Assistant United States Attorney, for Joseph S. Van Bokkelen, United States Attorney, Northern District of Indiana, Hammond, Ind., for Respondent.

Before MINER, CALABRESI, Circuit Judges, RESTANI, Chief Judge, U.S. Court of Int'l Trade.**

PER CURIAM:

Kaiser Rafiq ("Rafiq" or "Petitioner") petitions for review of a March 31, 2005 decision of the Board of Immigration Appeals ("BIA") affirming a November 16, 2004 decision of Immigration Judge ("IJ")

Joe D. Miller rejecting Rafiq's application for relief from removal under Article 3 of the United Nations Convention Against Torture ("CAT"). Rafiq, a lawful permanent resident of the United States but a native and citizen of Pakistan, was placed in removal proceedings as a result of his conviction for attempted criminal sale of a controlled substance, in violation of New York Penal Law §§ 110, 220.39(1). *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii), (a)(2)(B)(i). Rafiq contends that he would be subject to torture if returned to Pakistan, both because he is a convert from Islam to Catholicism, and because his grandfather was a controversial political figure notorious in Pakistan for his pro-Bengali statesmanship.[1] The IJ found that Rafiq failed to meet his burden of showing that he would more likely than not be tortured if returned to Pakistan, and the BIA reached the same conclusion.

We assume the parties' familiarity with the relevant facts, the procedural history, and the issues on review.

■ Because the BIA's per curiam decision "adopt[ed] and affirm[ed]" the IJ's decision, we review the decision of the IJ. *See Ming Xia Chen v. BIA,* 435 F.3d 141, 144 (2d Cir.2006). Rafiq's principal contention before us is that the IJ applied an incorrect legal standard for torture under CAT, specifically with respect to the state action requirement. On reviewing the IJ's decision and the record of the removal proceedings, we find it doubtful, at best, that the IJ applied the correct standard.

■ In *Khouzam v. Ashcroft,* this court held that "torture requires only that government officials know of *or remain willfully blind to an act* and thereafter

---

** The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

1. Below, Rafiq also suggested that he would be subject to imprisonment and torture in

Pakistan as a criminal deportee. Before us, he does not contest the IJ's and BIA's rejection of that claim.

breach their legal responsibility to prevent it." 361 F.3d 161, 171 (2d Cir.2004) (emphasis added). Despite the efforts of Rafiq's counsel to bring *Khouzam* to the IJ's attention, the IJ failed to acknowledge the decision as controlling authority, and in the removal hearing, the IJ made comments that strongly suggested he believed direct government involvement was required. *See* Joint App. at 86 ("We're talking about torture by the government only, not by private citizens."); *id.* at 87 ("I am not going to take evidence in this case that has something to do with private individuals bothering the respondent if he goes back to Pakistan."); *id.* at 88 ("[Torture] is when the government of a particular country either tortures you or has someone else do it for them or they see you being tortured as they put their stamp of approval on it even though it's being done by private citizens . . . ."); *id.* ("We're here for torture by the government or at their instigation."); *id.* at 138 ("My point is what is the government of Pakistan going to do if I send him back? The government, not extremist[s]. The government."). An IJ decision based on the application of an incorrect legal standard, of course, is subject to vacatur.[2] *See Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 337 (2d Cir.2006).

▮ Vacatur would not be required, however, were we able to predict with confidence that a remand to the agency would result in the denial of relief to Rafiq. *See Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 162 (2d Cir.2006); *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391,

395 (2d Cir.2005). Here, aside from the issue of state action, the IJ also found that Rafiq had not adduced sufficient evidence of mistreatment to meet his burden of eligibility for relief under CAT. This finding, if properly made, could constitute an alternative and sufficient basis for the IJ's decision, and thus obviate the need for a remand. *See Cao He Lin*, 428 F.3d at 401.

▮ However, the IJ's finding that Rafiq did not meet his burden of demonstrating eligibility for relief under CAT is also compromised by errors. The IJ's adverse conclusion appears, from his oral decision, to rest principally on his finding that an attack on Rafiq during a 1986 visit to Pakistan was a garden-variety robbery not motivated by religious or political animus. The IJ's conjecture about the motivation for the attack is problematic—not only because it lacks grounding in the record, *see, e.g., Zhou Yun Zhang v. INS*, 386 F.3d 66, 74 (2d Cir.2004), but also because it has little bearing on the dispositive issues of Rafiq's CAT claim. Such a finding does not impugn Rafiq's credibility (as would a finding that the attack was a fabrication, for instance), nor does it speak to the danger Rafiq would face if returned to Pakistan *now*.

While the IJ's decision focused on this marginal issue, it neglected entirely to mention the volume of documentary evidence submitted by Rafiq providing support for his claim that persons in his situation are more likely than not to be tortured if returned to Pakistan. *See, e.g.,* Julia Duin, "Christians Besieged in

---

2. If, rather than adopting the IJ's decision without apparent reservation, the BIA had restated the state action standard for torture under *Khouzam* and stated that Rafiq did not present evidence to satisfy it, vacatur on this ground might not be warranted. However, the BIA also failed to demonstrate that it was applying the correct standard. The BIA's decision cited to the appropriate regulation, but

not to *Khouzam's* authoritative construction of it. Rather, the BIA cited to *In re Y—L—*, 23 I & N Dec. 270 (2002)—a case overruled in part by *Khouzam*. Because we lack assurance that Rafiq's claim was judged against the correct standard, the order of removal cannot stand. *See Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 149 (2d Cir.2003).

Pakistan," *Washington Times,* June 28, 2003, Joint App. at 286 (describing beatings, rapes, and "acid-in-the-face" attacks of young Christian women in Pakistan; according to an interviewee, the unwillingness of police to investigate the complaints "emboldens extremists to continue to victimize Christians and other non-Muslims"); *Paul Watson,* "A Deadly Place for Blasphemy," *L.A. Times,* Aug. 5, 2002, Joint App. at 279 (describing death sentence for Muslim who converted to Christianity, as "[i]n Islam, apostasy—the abandonment of the faith—is a particularly grave offense, punishable by death"); U.S. Dep't of State, Pakistan Country Report on Human Rights Practices—2003, Joint App. at 428, 430 (reporting that "security forces [in Pakistan] regularly tortured, and otherwise abused persons," with more than two dozen prisoners dying as the result of torture within a year, and that "[p]olice failed in some instances to protect members of religious minorities—particularly Christians and Ahmadis—from societal attacks"); New Covenant Church of God: Pakistan's War on Christians (March 20, 2004), http://www.nccg.org/257Art-Pakistan.html, Joint App. at 193 (reporting the apparent torture and murder of Pakistani Christians unjustly charged with blasphemy: *e.g., "[a]* postmortem revealed he had been tortured with electric shocks and had kerosene and red chillies [sic] inserted into his anus. His body was swollen with multiple injuries[,] and he had ligature marks on his neck"). This omission, too, was error. *See Ramsameachire v. Ashcroft,* 357 F.3d 169, 185 (2d Cir.2004) (discussing the requirement in 8 C.F.R. § 208.16(c)(3) that the agency consider "all evidence relevant to the possibility of future torture").

Because we cannot confidently predict that the same result would be reached on remand, we are not at liberty to deny Rafiq's petition for review, notwithstanding the IJ's errors. *See Li Zu Guan v. INS* (2d Cir. June 29, 2006), 2006 U.S.App. LEXIS 16313, *18–*21; *see also In re G–A–,* 23 I. & N. Dec. 366 (BIA 2002) (upholding IJ's grant of CAT relief to Iranian Christian convicted of drug charges, on grounds, *inter alia,* that petitioner would be readily identifiable to authorities by his accent and appearance as a non-Muslim ethnic minority, and that, based on State Department report, he would likely be tortured if detained).

For the foregoing reasons, we GRANT the petition for review, VACATE the BIA's decision, and REMAND the case to the BIA for further proceedings consistent with this order. The pending motion for a stay of removal is DENIED as moot. Should the BIA find it appropriate to remand further, we urge that this case be assigned to a different IJ. *See, e.g., Qun Wang v. Att'y Gen. of the United States,* 423 F.3d 260, 271 (3d Cir.2005).