**Bejnjamin BESKOVIC, Petitioner,**

v.

**Alberto GONZALES, Attorney General, Respondent.**

**Docket No. 05–4172–AG.**

United States Court of Appeals, Second Circuit.

Submitted: Sept. 18, 2006.

Decided: Oct. 24, 2006.

Saul C. Brown, New York, NY, for Petitioner.

---

Charles E. Ex, Assistant United States Attorney (Edmond E. Chang, James Anderson, Craig A. Oswald, on the brief) for Patrick J. Fitzgerald, United States Attorney, Northern District of Illinois, for Respondent.

Before CALABRESI, B.D. PARKER, Circuit Judges, LYNCH, District Judge.*

B.D. PARKER, Jr., Circuit Judge.

Petitioner Bejnjamin Beskovic, a native and citizen of Serbia–Montenegro, seeks review of the July 21, 2005 order of the Board of Immigration Appeals ("BIA") affirming the March 26, 2004 decision of Immigration Judge ("IJ") Philip L. Morace, denying Beskovic's application for political asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Bejnjamin Beskovic,* No. A 95 365 596 (B.I.A. July 21, 2005), *aff'g* No. A 95 365 596 (Immig. Ct. N.Y. City Mar. 24, 2004). Because the IJ's analysis is insufficient for us to determine whether he applied the correct legal standard, it precludes meaningful appellate review. Accordingly, we vacate and remand to the BIA so that it can permit the IJ to reconsider or supplement his conclusion that Beskovic did not suffer past persecution.

## I. Background

Beskovic, a Sandzak Muslim, was born and raised in Plav, Montenegro. He left Montenegro at age fifteen to attend school in Kosovo, where he alleges that he was arrested by Serbian police, detained, interrogated, and beaten on two separate occasions. Beskovic claims the Serbian authorities took these actions because they believed him to be associated with the Kosovo Liberation Army ("KLA"). His detentions lasted two to three hours, during which the Serbian police interrogated and physically abused him.[1]

Beskovic entered the United States in May 2001 pursuant to the Visa Waiver Program, which allows aliens from certain countries to visit the United States for up to 90 days without a visa. *See* 8 U.S.C. § 1187(a) (2000 and Supp. II 2002); 8 C.F.R. § 217.2 (2006). He applied for asylum to the Immigration and Naturalization Service, which referred the application to an IJ who conducted a merits hearing on March 26, 2004, and rendered a decision the same day. The IJ found Beskovic credible, but determined that the mistreatment about which he testified did not rise to the level of persecution. The IJ denied the application for asylum and withholding of removal, and also concluded that he did not qualify for CAT relief. Beskovic appealed to the BIA, challenging the IJ's findings with respect to asylum and withholding of removal, but not the denial of CAT relief. The BIA adopted and affirmed the IJ's decision.

## II. Jurisdiction

We previously explained that "[a]liens admitted under [the Visa Waiver] program forfeit any right to challenge their removal, except that they may apply for asylum. Therefore, participants who do apply for asylum are processed in 'asylum-only' proceedings. Unless granted relief in those proceedings, the Visa Waiver applicant can be removed without further proceedings." *Kanacevic v. INS,* 448 F.3d 129, 133 (2d Cir.2006) (internal citations omitted). In *Kanacevic,* we held that although the deni-

---

* The Honorable Gerard E. Lynch, of the United States District Court for the Southern District of New York, sitting by designation.

1. Beskovic also stated that on many other occasions—virtually every time he went into the city—he was stopped by police and questioned about his association with the KLA.

al of relief in "asylum-only" proceedings does not result in an actual removal order, it is the functional equivalent of a removal order, and we therefore have jurisdiction over Beskovic's appeal under 8 U.S.C. § 1252(a)(1). *Id.* at 134–35.

## III. Standard of Review

Where, as here, the BIA fully adopts the IJ's decision, we review that decision. *See Secaida–Rosales v. INS*, 331 F.3d 297, 305 (2d Cir.2003). We review the agency's factual findings under the substantial evidence standard, overturning them only if a reasonable adjudicator would be compelled to reach a contrary conclusion. *See* 8 U.S.C. § 1252(b)(4)(B); *Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 (2d Cir.2004). Legal questions, and the application of law to fact, are reviewed de novo. *See Secaida–Rosales*, 331 F.3d at 307. When the BIA or IJ has failed to apply the law correctly, "we retain substantial authority to vacate BIA or IJ decisions and remand for reconsideration or rehearing." *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 337 (2d Cir.2006); *see also Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 149 (2d Cir.2003).

## IV. Analysis

### A. Legal Standard

The IJ determined that Beskovic's arrests and physical abuse did not rise to the level of persecution. In reaching that conclusion, the IJ did not identify the legal standard on which he relied in assessing whether the treatment Beskovic experienced at the hands of Serbian police constituted persecution. We addressed the issue of what type of conduct constitutes

persecution in *Tian–Yong Chen v. INS*, 359 F.3d 121 (2d Cir.2004). In *Chen*, the petitioner testified that he had been arrested and detained on account of his religion, and that while in custody the police officers "used their hands to beat [him]." *Id.* at 124 (alteration in original). In denying Chen's application for asylum, the IJ failed to acknowledge his testimony that he had been beaten, and the BIA's affirmance incorrectly stated that Chen had not testified to having been beaten. *Id.* at 127. On appeal to this Court, we noted that, "[b]ecause the BIA's conclusion was predicated on its mistaken belief that the record contained no evidence of any beating, its analysis cannot be regarded as based on the evidence of record, and we [were] deprived of the ability adequately to review the BIA's denial of Chen's applications for asylum and withholding of deportation." *Id.* at 129. We granted the petition and remanded, rejecting the government's contention that the error was inconsequential. *Id.* at 128. We noted that while "persecution" in the asylum context means that the mistreatment must rise above mere harassment, the term includes "more than threats to life or freedom" because "non-life [-]threatening violence and physical abuse also fall within this category." *Id.* (alteration in original, internal quotation marks omitted).[2]

In *Ivanishvili v. U.S. Department of Justice*, 433 F.3d 332 (2d Cir.2006), we again considered when physical mistreatment amounts to persecution. We concluded that the IJ in that case had failed to distinguish adequately between "harassment" and "persecution." *Id.* at 340. We stated that: "persecution is the infliction

---

**2.** The Seventh Circuit has held that "[t]ypes of actions that might cross the line from harassment to persecution include: detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of proper-

ty, surveillance, beatings, or torture." *Begzatowski v. INS*, 278 F.3d 665, 669 (7th Cir. 2002) (internal quotation marks omitted) (cited in *Chen*, 359 F.3d at 128).

of suffering or harm upon those who differ on the basis of a protected statutory ground," while " 'harassment' is '[w]ords, conduct, or action (usu[ally] repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose.' " *Id.* at 341 (alteration in original, citations omitted). We explained that although "persecution does not encompass mere harassment," *id.,* evidence that "an alien, because of her membership in a statutorily protected class, suffer[ed] physical abuse and violence at the hands of government agents ... may preclude a finding that the conduct is mere harassment that does not as a matter of law rise to the level of persecution, for *violent conduct generally goes beyond the mere annoyance and distress that characterize harassment." Id.* at 342 (citing *Chen,* 359 F.3d at 128) (emphasis added).[3]

■ Where, as here, a petitioner was arrested and detained on account of some protected ground and is subjected to physical abuse, mistreatment, or degradation at the hands of arresting officials, the BIA and individual IJs must be sensitive to the obvious reality that such detention and physical mistreatment are usually correlative, not coincidental. They must also be sensitive to the fact that even mistreatment that, in other contexts, could fairly

be characterized as "the mere annoyance and distress" of harassment, *Ivanishvili,* 433 F.3d at 342, can take on an entirely different character when officially inflicted on an individual while detained on account of protected grounds. In other words, while "the difference between harassment and persecution is necessarily one of degree," *id.* at 341, the degree must be assessed with regard to the *context* in which the mistreatment occurs. The BIA must, therefore, be keenly sensitive to the fact that a "minor beating" or, for that matter, any physical degradation designed to cause pain, humiliation, or other suffering, may rise to the level of persecution if it occurred in the context of an arrest or detention on the basis of a protected ground. *See Chen,* 359 F.3d at 128.

■ Furthermore, the fact that the conduct underlying an arrest violated a generally applicable law does not automatically preclude finding that the circumstances of the arrest combined with physical mistreatment or degradation constitute past persecution. Whether the conduct for which a petitioner is arrested implicates a petitioner's race, religion, nationality, social group membership, or political opinion is critical. For example, if a particular country outlawed the display of the American flag, it would, to say the least, be anomalous to conclude that an individual arrested and mistreated for violating such

---

3. We note the existence of confusion in our Court's treatment of the standard for assessing past persecution claims that involve allegations of physical harm inflicted on a detainee by government officials. This confusion is attributable to dicta in *Ai Feng Yuan v. United States Department of Justice,* quoting language from an Eighth Circuit case which stated that "minor beatings and brief detention ... do not amount to political persecution." 416 F.3d 192, 198 (2d Cir.2005) (citation omitted). In *Yuan,* because the petitioner was briefly detained twice *but was not beaten or mistreated in any way* during either detention, *id.* 195

& n. 2, we held that the petitioner's treatment did not constitute persecution. *Id.* at 198. *Yuan's* dicta, therefore, is of no assistance in cases, such as the instant one, where physical mistreatment occurs during detention. Instead, we are obliged to look to our holding in *Chen* that persecution includes non-life-threatening violence and physical abuse. *See Chen,* 359 F.3d at 128–29. We also look to our holding in *Ivanishvili* that violent conduct generally goes beyond the mere annoyance and distress that characterizes harassment. *See Ivanishvili,* 433 F.3d at 342.

a law would not be a victim of political persecution simply because the law was one of general applicability. *Cf. Saleh v. U.S. Dep't of Justice,* 962 F.2d 234, 239 (2d Cir.1992) (punishment for unjustifiable homicide not persecution); *MacCaud v. INS,* 500 F.2d 355, 359 (2d Cir.1974) (prospect of imprisonment for counterfeiting not persecution). The circumstances surrounding a petitioner's arrest or detention require a case-by-case adjudication by the BIA. *Cf. Chen,* 359 F.3d at 129–30.

## B. The IJ's Decision

The IJ's explanation of why Beskovic had not shown past persecution was insufficient to permit meaningful review of whether the IJ correctly applied the standards set forth in *Chen. See Poradisova v. Gonzales,* 420 F.3d 70, 77 (2d Cir.2005) ("Despite our generally deferential review of IJ and BIA opinions, we require a certain minimum level of analysis from the IJ and BIA opinions denying asylum, and indeed must require such if judicial review is to be meaningful."). This shortcoming is significant. Whether or not Beskovic is entitled to a presumption of future persecution requires a determination, based on the correct legal standard, of whether he suffered past persecution. Because we cannot determine whether the IJ correctly assessed Beskovic's claim of past persecution, we are stymied. In these circumstances, we remand since we cannot predict with confidence that, applying the correct legal standard, the agency would again deny relief. *See Rafiq v. Gonzales,* 458 F.3d 36, 38–39 (2d Cir.2006) (per curiam).

There is an additional deficiency in the proceedings below that also makes remand appropriate. If the IJ had determined that Beskovic suffered past persecution, a rebuttable presumption of future persecution would have arisen, which the government could have overcome by demonstrating changed country conditions. *See Islami v. Gonzales,* 412 F.3d 391, 394 n. 3 (2d Cir.2005). Although the IJ evaluated evidence of changed country conditions with respect to future persecution on the basis of Beskovic's religion, ethnicity, and evasion of military conscription, the IJ did not evaluate this evidence with respect to future persecution on the basis of Beskovic's imputed political opinion, specifically, the perception he had been a member or supporter of the KLA. Therefore, it is not clear from the record whether a former member of the KLA, or a sympathizer, would be subject to political persecution in Serbia today.

## V. Conclusion

For the forgoing reasons, the petition for review is GRANTED. We VACATE the BIA's affirmance of the IJ's denial of Beskovic's application for asylum and withholding of removal, and GRANT any pending motion for a stay of removal. We REMAND to the BIA so that it, or the IJ, may further explain or reconsider the conclusion that Beskovic did not suffer past persecution.