**Siraj Abdul REHMAN, Petitioner,**

v.

**Alberto GONZALES, Attorney General of the United States, District Director New York Immigration and Customs Enforcement, Respondents.**

**No. 06–2486–ag.**

United States Court of Appeals, Second Circuit.

Aug. 2, 2007.

Mehreen Shah, New York, NY, for Petitioner.

Peter D. Keisler, Assistant Attorney General, Civil Division; David V. Bernal, Assistant Director; Jesse M. Bless, Attorney, Office of Immigration Litigation, Civil Division, U.S. DOJ, Washington, D.C., for Respondents.

PRESENT: Hon. ROBERT D. SACK, Hon. SONIA SOTOMAYOR and Hon. ROBERT A. KATZMANN, Circuit Judges.

### SUMMARY ORDER

Petitioner Siraj Abdul Rehman, a citizen of Pakistan and a Shi'a Ismaili Muslim, seeks review of a May 4, 2006 order of the BIA affirming the January 21, 2005 decision of Immigration Judge ("IJ") Patricia A. Rohan denying Rehman's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Siraj Abdul Rehman,* No. A 95 961 788 (B.I.A. May 4, 2006), *aff'g* Nos. A 95 961 788; A 95 961 789 (Immig. Ct. N.Y. City Jan. 21, 2005). We assume the parties' familiarity with the underlying facts and procedural history in this case.

As an initial matter, Title 8, Section U.S.C § 1158(a)(3) of the United States Code provides that no court shall have jurisdiction to review the agency's finding that an asylum application was untimely under 8 U.S.C. § 1158(a)(2)(B), or its finding of neither changed nor extraordinary circumstances excusing the untimeliness under 8 U.S.C. § 1158(a)(2)(D). Notwithstanding that provision, however, this Court retains jurisdiction to review constitutional claims and "questions of law." 8 U.S.C. § 1252(a)(2)(D). Here, Rehman has merely challenged the IJ's factual findings and the agency's exercise of discretion regarding whether he established changed circumstances to excuse the untimely filing of his asylum application. Because Rehman does not raise a question of law or constitutional claim, we lack jurisdiction to review his asylum claim. *See Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 326–27 (2d Cir.2006). Accordingly, we dismiss the petition for review to this extent.

Section 1158(a)(3) applies only to asylum requests and does not divest this Court of jurisdiction under § 1252(a) to review final orders of removal which deny other forms of relief. *See Joaquin–Porras v. Gonzales,* 435 F.3d 172, 180–81 (2d Cir.2006). We therefore review Rehman's remaining claims on the merits.

When the BIA adopts the decision of the IJ and supplements the IJ's decision, this Court reviews the decision of the IJ as supplemented by the BIA. *See Yu Yin Yang v. Gonzales,* 431 F.3d 84, 85 (2d Cir.2005); *Yan Chen v. Gonzales,* 417 F.3d 268, 271 (2d Cir.2005). This Court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard. 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 & n. 7 (2d Cir.2004). However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *Cao He Lin v. U.S.*

*Dep't of Justice,* 428 F.3d 391, 406 (2d Cir.2005); *Tian–Yong Chen v. INS,* 359 F.3d 121, 129 (2d Cir.2004); *see also Xiao Ji Chen,* 471 F.3d at 339–40 (agreeing with this principle, but declining to remand, in spite of deficiencies in an adverse credibility determination, because it could be confidently predicted that the IJ would adhere to the decision were the case remanded).

▮ Substantial evidence supports the IJ's finding that Rehman failed to demonstrate past persecution. Here, the IJ took into account that Rehman had been robbed at his store four times, and was physically attacked during two of these robberies, as well as called an "Agha Khani infidel." The IJ also noted that Rehman and his wife had been hit by stones thrown by unknown assailants, and that Sunni Muslim teachers did not give his children fair marks. However, Rehman was never arrested, detained, or beaten by the authorities, and he failed to show a "deliberate imposition of a substantial economic disadvantage" that would constitute economic persecution. *Guan Shan Liao v. U.S. Dep't of Justice,* 293 F.3d 61, 67 (2d Cir. 2002). As such, the IJ reasonably found that he failed to establish past persecution, and therefore, was not entitled to the presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(1); *Matter of Acosta,* 19 I. & N. Dec. 211, 222 (BIA 1985) (defining persecution as "a threat to the life or freedom of, or the infliction of suffering or harm upon, those who differ in a way regarded as offensive"). *But see Beskovic v. Gonzales,* 467 F.3d 223, 226 (2d Cir.2006) (emphasizing that a "minor beating" or any physical degradation intended to cause suffering, may rise to the level of persecution if it occurred in the context of an arrest or detention on the basis of a protected ground (quotation marks omitted)). Furthermore, there is no indication that the IJ did not consider the cumulative effect of the events. *See Poradisova v. Gonzales,* 420 F.3d 70, 79–80 (2d Cir.2005).

Despite her proper finding as to past persecution, the IJ's determination that Rehman failed to demonstrate a well-founded fear of persecution, whether based on his membership in a particular social group or on his religion, requires remand for several reasons. The IJ misapprehended the record in finding that the acts of violence, harassment and discrimination, were part of the "general, harsh, oppressive conditions shared by most Pakistanis." To the contrary, the 2002 and 2003 International Religious Freedom Reports on which the IJ relied indicate that sectarian and religious violence was ongoing at the time, with the "worst religious violence [ ] directed against the country's Shi'a minority, who continued to be disproportionate victims of individual and mass killings." These background materials also indicate that discriminatory religious legislation "fostered an atmosphere of religious intolerance, which contribute[d] to acts of violence directed against minority Muslim groups, as well as against Christians, Hindus, and members of Muslim offshoot groups." The reports estimated that ten to fifteen percent of the Muslim population in Pakistan was Shi'a, including some 550,000 to 600,000 Ismailis. According to the reports, there were instances in which the Pakistani government "failed to intervene in cases of societal violence directed at minority religious groups, particularly Shi'as," and "the lack of an adequate government response contributed to an atmosphere of impunity for acts of violence and intimidation against religious minorities."

▮ Additionally, while the reports indicated that there were no confirmed reports of torture of prisoners or detainees because of their religious beliefs, the Pakistani government admitted that "police brutality against all citizens [was] a problem,"

there were instances in which the police used excessive force against individuals because of their religious beliefs and practices, and the police failed to act against persons who use force against other individuals because of their religious beliefs. Moreover, although the IJ accurately observed that the reports indicate that the Pakistani government had not harassed Ismailis, nor had they been targeted by extremist groups, such circumstances did not detract from Rehman's allegations that he had endured robberies, beatings, harassment, and discrimination in Pakistan on account, in part, of his religious beliefs. Thus, the background materials indicate that, contrary to the IJ's finding, Shi'a and other religious minorities suffer a disproportionate amount of violence in Pakistan. In this context, although the incidents described by Rehman did not in themselves amount to past persecution, they were nevertheless relevant to a well-founded fear analysis. *See Rizal v. Gonzales*, 442 F.3d 84, 92 (2d Cir.2006).

■ Furthermore, the IJ's finding that Rehman's claim lacked a nexus to a protected ground was also flawed. In analyzing whether Rehman had demonstrated a well-founded fear of persecution, the IJ failed to consider that his allegations indicated that the perpetrators of the robberies had a mixed-motive. While the IJ

found that "there [was] no evidence that [Rehman] was singled out for robbery or other acts of violence on account of his membership in the Ismaili community," she contradictorily observed that Rehman was "slurred as an infidel" during two of the robberies. Although it is possible that the perpetrators of violence against Rehman were primarily motivated by criminal gain, in these cases, " 'an applicant does not bear the unreasonable burden of establishing the exact motivation of a 'persecutor' where different reasons for actions are possible.' " *See In re S–P–*, 21 I. & N. Dec. 486, 489–90 (BIA 1996) (quoting *Matter of Fuentes*, 19 I & N Dec. 658, 662 (BIA 1988)). The IJ's misstatement of the record and erroneous finding as to a lack of nexus, as adopted and affirmed by the BIA, require remand, because it cannot be stated with confidence that the IJ would find Rehman ineligible for withholding of removal, absent the errors. *Xiao Ji Chen*, 471 F.3d at 339–40.

■ The IJ's finding that Rehman failed to establish that it would not be reasonable for him to relocate within Pakistan is likewise problematic because the IJ failed to acknowledge the relevant country conditions discussed above.[1] Thus, this factor provides further reason for remand, when it is unclear whether the IJ would adhere

1. Rehman did not specifically challenge the IJ's relocation finding before the BIA. Although we recently held that an alien failed to exhaust his administrative remedies with respect to his application for withholding of removal when he failed to exhaust the issue of relocation, which constitutes a ground for denial of such an application, (*see Steevenez v. Gonzales*, 476 F.3d 114, 118 (2d Cir.2007)) this issue nevertheless remains within our purview. The instant case is distinguishable from *Steevenez* in that the Government did not argue that Rehman failed to exhaust the relocation issue below, the BIA did not explicitly rely on Rehman's failure to challenge the IJ's relocation finding when dismissing his appeal, and, Rehman did not concede, as did Steevenez, that he was able to relocate within his native country. Furthermore, Rehman's challenge to the agency's well-founded fear of persecution finding plainly encompassed the relocation finding insofar as he argued that the Pakistani government is "powerless to act" against the fundamentalists who target Ismailis based on false views of this group which "permeate" Pakistani society. AR at 44, 52. Accordingly, while the Government contends that Rehman has waived any challenge to the IJ's relocation finding before this Court, we address this issue on appeal when he raises the same assertions here as he did in his brief to the BIA.

to the same determination, absent her misapprehension of the record. *See id.*

For the foregoing reasons, the petition for review is DISMISSED, in part, and GRANTED, in part, the decision of the BIA is VACATED, and the case REMANDED for further proceedings consistent with this decision. The stay of removal that the Court previously granted in this petition is VACATED.