Yelena **LITVINOVA**, Petitioner,

v.

Michael B. **MUKASEY**, United States Attorney General,[1] Respondent.

No. 07–3149–ag.

United States Court of Appeals, Second Circuit.

Aug. 20, 2008.

Alexander J. Segal, New York, NY, for Petitioner.

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto Gonzales as the respondent in this case.

Jeffrey S. Bucholtz, Acting Assistant Attorney General, Michelle Latour, Assistant Director, Nairi M. Simonian, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondent.

PRESENT: Hon. RALPH K. WINTER, Hon. ROSEMARY S. POOLER and Hon. PETER W. HALL, Circuit Judges.

### SUMMARY ORDER

Petitioner Yelena Litvinova, a native of the Union of Soviet Socialist Republics and a citizen of Russia, seeks review of a June 22, 2007 order of the BIA affirming the October 4, 2005 decision of Immigration Judge ("IJ") Paul A. DeFonzo denying her application for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). *In Re Yelena Litvinova,* No. A95 161 992 (B.I.A. Jun. 22, 2007), *aff'g* No. A95 161 992 (Immig. Ct. New York City, Oct. 4, 2005). We assume the parties' familiarity with the underlying facts and procedural history of the case.

### I. Timeliness

As a preliminary matter, the Government has moved to dismiss this case as untimely pursuant to 8 U.S.C. § 1252(b)(1). Indeed, the petition for review in this case was docketed as having been filed in this Court on July 24, 2007, one day late. However, both Litvinova's counsel and her counsel's paralegal have submitted sworn affidavits, made under penalty of perjury, stating that the paralegal actually filed the petition for review on July 23, 2007, the last day of the filing period, but inadvertently neglected to time-stamp it before placing it in the Court's drop-box. The Government has not disputed this explanation. We find the

evidence sufficient to conclude that the petition was timely filed, and we accordingly deny the Government's motion to dismiss the petition for review as untimely.

### II. Merits

When the BIA does not adopt the decision of the IJ to any extent, we review only the decision of the BIA. *See Yan Chen v. Gonzales,* 417 F.3d 268, 271 (2d Cir.2005); *Jin Yu Lin v. U.S. Dep't of Justice,* 413 F.3d 188, 191 n. 4 (2d Cir. 2005).[2] We review questions of law *de novo,* including "what evidence will suffice to carry any asylum applicant's burden of proof." *Islami v. Gonzales,* 412 F.3d 391, 396 (2d Cir.2005). We review factual findings under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Manzur v. DHS,* 494 F.3d 281, 289 (2d Cir.2007).

### A. Asylum

Title 8, Section 1158(a)(3) of the United States Code provides that no court shall have jurisdiction to review the agency's finding that an asylum application was untimely under 8 U.S.C. § 1158(a)(2)(B), or its finding of neither changed nor extraordinary circumstances excusing the untimeliness under 8 U.S.C. § 1158(a)(2)(D). While we retain jurisdiction, under 8 U.S.C. § 1252(a)(2)(D), to review constitutional claims and "questions of law," Litvinova has challenged only the agency's purely factual determinations and its exercise of discretion. We therefore dismiss Litvinova's petition for review for lack of jurisdiction to the extent that she challenges the agency's denial of her asylum claim. *See Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 329–331 (2d Cir.

---

**2.** Although the BIA agreed with the IJ that Litvinova failed to file her asylum application within one year of her arrival in the United States, it did not adopt any part of the IJ's decision with regard to withholding of removal or CAT relief.

2006); *Joaquin–Porras v. Gonzales*, 435 F.3d 172, 177–80 (2d Cir.2006).

## B. Withholding of Removal and CAT Relief

Eligibility for withholding of removal and relief under the CAT are not subject to the one-year bar and must be considered regardless of the timeliness of the initial asylum request. *See Xiao Ji Chen*, 471 F.3d at 332, 340. Here, we conclude that the BIA erred in finding that Litvinova did not establish a well-founded fear of future persecution. In its decision, the BIA concluded, broadly, that the record contained no evidence that Baptists are persecuted in Russia. That sweeping conclusion, without more, is "insufficient to permit meaningful review." *See Beskovic v. Gonzales*, 467 F.3d 223, 227 (2d Cir. 2006).

Despite the deference typically afforded to IJ and BIA decisions, we "require a certain minimum level of analysis from the IJ and BIA opinions denying asylum, and indeed must require such if judicial review is to be meaningful." *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir.2005). "[I]t is well established that private acts may be persecution if the government has proved unwilling to control such actions." *Pavlova v. INS*, 441 F.3d 82, 91 (2d Cir.2006) (citing *Ivanishvili v. U.S. Dept. of Justice*, 433 F.3d 332, 342 (2d Cir.2006)). Our review of the record reveals that a person in Litvinova's circumstances may not receive the protection of the law. In *Pavlova*, as in this case, the petitioner alleged that she was persecuted by members of the Russian National Union ("RNU") and that the Russian authorities were unwilling to control them. *See id.* We found that these allegations were "reinforced by Pavlova's submission of a number of articles

from newspapers and other sources that report discrimination by Russian authorities against 'foreign' sects and in favor of the Russian Orthodox Church." *Id.* at 92.

Here, the BIA quoted selectively from the country reports and did not adequately address parts of the reports specific to Litvinova's circumstances. The BIA's only specific reference to the country reports was to quote the statement of the 2004 International Religious Freedom Report for Russia that "[i]nstances of religiously motivated violence continue." The BIA's decision then concluded, without elaboration, that "there is insufficient evidence in the record to indicate that any such incidents are sufficiently widespread to support even a grant of asylum[,] much less a grant of withholding of removal."

But other evidence in the record suggests that Litvinova's fear of future persecution is objectively reasonable. For example, while the 2004 Country Report on Human Rights Practices in Russia acknowledged that "religious matters were not a source of societal hostility for most citizens," it added that "members of minority and 'non-traditional' religions continued to encounter prejudice, societal discrimination, and in some cases physical attacks." And of greatest significance to Litvinova's case, the report stated that arrests of those suspected of religious violence were "extremely infrequent," and that convictions were "rare."

As a member of a small religious minority, Litvinova is different from "most citizens," and the specific nature of the harms she experienced, combined with record evidence suggesting that the police are unwilling to control violence against religious minorities, suggests that even if the harms she previously experienced do not rise to the level of persecution,[3] her fear of future

---

**3.** We need not determine in this case whether the BIA erred in concluding that Litvinova did not experience past persecution, as we find that the case must be remanded in any event for further consideration of her claim of a well founded fear of future persecution.

persecution may be well-founded. This is especially true given the explicit threats made against Litvinova's life shortly before her departure from Russia. Though Litvinova may have survived past attacks without lasting physical injury, the indifferent official response she received combined with the specific future threats against her demonstrates that her fear of worse attacks in the future has "solid support" in the record and is not merely "speculative." *Cf. Jian Xing Huang v. INS,* 421 F.3d 125, 129 (2d Cir.2005).

It is undisputed that Litvinova's fear is subjectively held, and a fear may be objectively reasonable "even if there is only a slight, though discernible, chance of persecution." *Diallo v. INS,* 232 F.3d 279, 284 (2d Cir.2000) (citing *INS v. Cardoza–Fonseca,* 480 U.S. 421, 431, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). Accordingly, we remand the case to the BIA for further consideration in light of evidence in the record suggesting that Russian authorities are unlikely to protect Litvinova from future harm based on her religious beliefs.

On remand, the BIA may wish to consider changes to the state of religious freedom in Russia that have occurred since it entered a final order of removal against Litvinova. We note that a 2006 report on religious freedom stated that Russia was "retreating from democratic reform and endangering significant gains on human rights, including freedom of religion or belief" and that it was "increasingly clear that this is a deliberate policy of the Russian government." *See* United States Commission on International Religious Freedom, Annual Report, May 2006, at 159.

The 2007 report observed that "[t]he deterioration in the human rights climate over the past few years appears to be a direct consequence of the increasingly authoritarian stance of the Russian government, as well as the growing influence of chauvinistic groups in Russian society, which seem to be tolerated by the government." *Id.* The Commission found that "political authoritarianism—combined with rising nationalism and a sometimes arbitrary official response to domestic security concerns—is jeopardizing the human rights of Russia's citizens, including members of the country's religious and ethnic minorities." *Id.* at 50. Of particular relevance to this case, the Report observed that although "Russian law has several provisions that address crimes motivated by ethnic or religious hatred[,] ... Russia's law enforcement agencies had a history of infrequent, inconsistent, and even arbitrary and inappropriate application of these provisions." *Id.* The Report added that "attacks have occurred against members of Muslim, Jewish, Protestant and other religious communities that are explicitly motivated by religious factors, and leaders of these three communities have expressed concern to the Commission about the growth of chauvinism in Russia." *Id.* at 51. These same community leaders are, according to the Report, "apprehensive that Russian government officials provided tacit or active support for a view held by many ethnic Russians that their country should be reserved for them and that Russian Orthodoxy is the country's so-called 'true religion.'" *Id.*

Although we are remanding the case for further consideration based on the existing record, we also encourage the BIA to consider whether the state of religious freedom for religious minorities in Russia has so deteriorated since the 2004 Country Report that Litvinova has a well-founded fear of future persecution if returned to Russia.[4] Furthermore, since we are re-

4. Our decision should not be read to require the BIA to consider evidence that was not in the record before it. *See Xiao Xing Ni v. Gonzales,* 494 F.3d 260, 267–71 (2d Cir.2007).

manding the case for further consideration of Litvinova's fear of future persecution, the BIA may wish to consider whether, under *Pavlova,* the harms experienced by Litvinova amounted to past persecution. *See Pavlova,* 441 F.3d at 91–92.

Because Litvinova's CAT claim was based on the same factual predicate underlying the withholding of removal claim, we also remand that claim to the agency for further consideration. *Cf. Paul v. Gonzales,* 444 F.3d 148, 156 (2d Cir.2006); *Xue Hong Yang v. U.S. Dep't of Justice,* 426 F.3d 520, 523 (2d Cir.2005).

For the foregoing reasons, the Government's motion to dismiss the petition is DENIED; the petition for review is DISMISSED in part and GRANTED in part, the BIA's decision is VACATED, and the case is REMANDED for further proceedings not inconsistent with this order. As we have completed our review, the pending motion for a stay of removal is DISMISSED as moot.