**Shafi Mohamed UWAIS, Noor Fiyaza Rizvie Petitioners,**

v.

**UNITED STATES ATTORNEY GENERAL, Respondent.**

Docket No. 03–4697–AG.

United States Court of Appeals, Second Circuit.

Argued: Nov. 15, 2006.

Decided: Feb. 28, 2007.

"Board") affirming the March 1, 1999 decision of Immigration Judge Gabriel C. Videla denying her claims. *See In re Uwais, Rizvie,* Nos A 70 648 863 and A 73 625 916 (BIA Mar. 13, 2003), *aff'g* Nos A 70 648 863 and A 73 625 916 (Immig. Ct. N.Y. City Mar. 1, 1999). The co-petitioner, Shafi Mohamed Uwais ("Uwais"), is her husband. The petitioners did not know each other when they lived in Sri Lanka, and their applications are based on different events. Uwais' petition for review is addressed in a companion order filed today. For the reasons hereinafter stated, Rizvie's petition for review is GRANTED, the Board's decision as to her claims is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.

## I. FACTS

Rizvie is a Tamil Muslim. At her removal hearing she testified that in Sri Lanka she lived at home with her mother in an area of Colombo that was known for Tamil activity. Four young Tamil men were tenants in an annex to the Rizvie house. On April 5, 1995, Sri Lankan police came to the home. They searched and found guns and Tamil Tiger materials in the tenants' apartment. The police questioned Rizvie and her mother about the four men.

Rizvie told the officers that neither she nor her mother knew about the weapons. The officers said they did not believe her. They accused mother and daughter of knowingly housing Tamil Tigers. The police arrested Rizvie and took her to jail. They told her mother that they would not release Rizvie until they learned more about the four young Tamil men and received a bribe.

Joseph A. Devamithran, and Visuvanathan Rudrakumaran, of counsel, Law Office of Joseph A. Devamithran, Fairfax, VA., for Petitioners.

Jocelyn Burton, Assistant United States Attorney, for Kevin V. Ryan, United States Attorney for the Northern District of California, San Francisco, CA, for Respondent.

Before: CALABRESI and WESLEY, Circuit Judges, and OBERDORFER, District Judge.*

OBERDORFER, District Judge.

Noor Fiyaza Rizvie ("Rizvie"), is a native and citizen of Sri Lanka. She has lived in the United States since she entered on July 6, 1995 with a legal visa. She filed an application for asylum and withholding of removal in 1998. She petitions for review of a March 13, 2003 order of the Board of Immigration Appeals (the

* The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

The police detained Rizvie for three days while they interrogated her repeatedly about her purported connections with the four tenants. Of special importance to this case, Rizvie testified that while she was detained, an officer sexually assaulted her, beat her, and attempted to rape her. She further testified that he tried to "misuse" her "[b]ecause I'm Tamil, she [sic] was—he was trying to take advantage of me. I cried and I told—I don't have any connection for this." According to Rizvie, the officer warned her that if she told anyone, she would be killed. He also allegedly told her that reporting his conduct would be futile: in her asylum application, Rizvie explained that the officer "said as a Tamil girl under suspicion no one would believe me and that nothing would ever happen to him." She testified that she "was scared because this is not the first time. So many Tamil girls have been taken like this."

Nevertheless, the police released Rizvie after her mother paid a bribe. Soon thereafter, the police arrested one of the Tamil tenants. The tenant purportedly told the police that he "had a connection" with Rizvie. She testified that this accusation was false, but she believes this caused the police to further suspect her of having information about Tamil Tiger activity. The police returned to Rizvie's home and questioned her mother about Rizvie's whereabouts; her mother lied, telling them that she had already left the country. According to Rizvie's testimony, her mother told her that the police threatened that "if she seen [sic] anywhere, we will do whatever we want to do to her and we know what to do for her."

Later, Rizvie told her employer what had happened to her. With his help, she obtained a visa and legally entered the United States on July 6, 1995.

Rizvie met Uwais in Brooklyn. They were married in 1996 and had a son in 1997. Rizvie's mother came to the United States for two months in 1997, but chose to return to Sri Lanka. In July 1998, when their son was 8 months old, they sent him to Sri Lanka to meet his paternal grandparents. The child traveled in the care of a family friend who was a Tamil male.

## II. PROCEDURAL BACKGROUND

In 1998, Rizvie filed the pending application for asylum and withholding of removal, asserting that the incidents described above made her eligible for relief. She claimed that these events amounted to persecution on the basis of her imputed political opinion and her Tamil ethnicity. An Immigration Judge found that Rizvie failed to establish eligibility for asylum. He cited several aspects of her testimony that he found troubling, including: (1) her "detached monotone" while testifying, (2) her mother's willingness to return to Sri Lanka, and (3) Rizvie's willingness to send her then 8-month old son to Sri Lanka, accompanied only by a friend of his father.

Rizvie appealed to the Board. In its decision, the Board remarked that it was "somewhat troubled by some of [Rizvie's] testimony," including the child's travel and the mother's decision to return to Sri Lanka. However, the Board found that Rizvie gave credible testimony about the abusive incidents of April 1995, which "formed the heart of her claim." The Board nevertheless denied Rizvie's asylum and withholding of removal claims, holding that the April 1995 incident did not constitute persecution on account of a protected ground. The Board explained that it was not unreasonable for the police to question or detain Rizvie, given that the officers had found weapons on her property. The Board further concluded that "the assault by the police officer, while reprehensible, does not appear to have been motivated, even in part, by any protected ground."

## III. DISCUSSION

### A. *Legal Framework*

■ An alien seeking political asylum bears the burden of establishing inability or unwillingness to return home because of past persecution or a well-founded fear of persecution on a protected ground: "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). If an applicant establishes past persecution on a protected ground, a well-founded fear of future persecution on such a ground is presumed. *Secaida–Rosales v. INS*, 331 F.3d 297, 306 (2d Cir.2003).

■ In order to meet this burden, an applicant's testimony alone may be sufficient. *Id.* at 306. Moreover, an applicant "cannot be expected to provide direct proof of [a] persecutor's motives." *INS v. Elias–Zacarias*, 502 U.S. 478, 482–83, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The protected ground need not be the sole motive: "the plain meaning of the phrase 'persecution on account of the victim's political opinion,' does not mean persecution solely on account of the victim's political opinion." *Osorio v. INS*, 18 F.3d 1017, 1028 (2d Cir.1994). Where there are mixed motives for a persecutor's actions, an asylum applicant need not show with absolute certainty why the events occurred, but rather, only that the harm was motivated, in part, by an actual or imputed protected ground. *See Matter of S–P–*, 21 I. & N. Dec. 486, 494–95 (BIA 1996). Finally, the motive for the harm inflicted must be analyzed in light of the context in which the harm occurred. *Gjolaj v. BCIS*, 468 F.3d 140, 142 (2d Cir.2006).

### B. *Standards of review*

■ "When the [Board] issues an opinion, 'the opinion becomes the basis for judicial review of the decision of which the alien is complaining.'" *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir.2005) (quoting *Niam v. Ashcroft*, 354 F.3d 652, 655 (7th Cir.2004)). In particular, when, as here, the Board rejects an Immigration Judge's adverse credibility finding, this Court reviews only the decision of the Board. *Id.*

■ We examine legal questions, and the application of law to fact, *de novo. See Beskovic v. Gonzales*, 467 F.3d 223, 225 (2d Cir.2006); *see also Secaida–Rosales*, 331 F.3d at 307. When the agency has failed to apply the law correctly, "we retain substantial authority to vacate [Board] or [Immigration Judge] decisions and remand for reconsideration or rehearing." *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 337 (2d Cir.2006).

### C. *Analysis*

■ Because the Board found Rizvie credible (*see supra,* section II), "we assume, but do not determine, [her] credibility as to [her] testimony concerning the events of [her] past." *Yan Chen*, 417 F.3d at 271–72. However, in dismissing Rizvie's claims, the Board misapplied the law and failed to consider key parts of her testimony.

■ The Board first erred in failing to consider the context in which the beating and sexual assault occurred. *See Gjolaj*, 468 F.3d at 143. "[I]mputed political opinion, whether correctly or incorrectly attributed, can constitute a ground of political persecution within the meaning of the Immigration and Nationality Act." *Gao v. Gonzales*, 424 F.3d 122, 129 (2d Cir.2005). Rizvie's undisputed testimony, which the Board found credible, evidences that she was arrested, detained, interrogated, and severely questioned on account of imputed political opinion based on her suspected affiliation with the armed Tamil Tiger tenants. This evidence by itself is sufficient to establish that Rizvie's subsequent maltreatment was, at least in part, based on

that protected ground. The Board should have been sensitive to the "obvious reality" that if Rizvie had not been arrested and detained on account of her suspected involvement with the Tamil Tigers, there would have been no attempted sexual assault; "such detention and physical mistreatment are usually correlative, not coincidental." *Beskovic,* 467 F.3d at 226.

The Board's decision also improperly "omitt[ed] potentially significant facts." *Tian–Yong Chen v. INS,* 359 F.3d 121, 127 (2d Cir.2004). With minimal explanation, the Board perfunctorily concluded that Rizvie had not presented sufficient evidence that the sexual assault was "motivated, even in part, by any protected ground." To the contrary, Rizvie testified that the assault was motivated, at least in part, by two protected grounds: (1) the police officer's perception that she was affiliated with Tamil Tigers, and (2) her ethnicity as a Tamil woman. The Board accepted her account of these events as credible, but did not consider the legal import of this testimony.

The government suggests that this Circuit's decision in *Melgar de Torres v. Reno,* 191 F.3d 307 (2d Cir.1999) supports the Board's conclusion that Rizvie's persecution was not based on a protected ground. There, however, the asylum applicant: (1) "admit[ted] that she ha[d] no knowledge that the soldiers raped her because of her or her uncle's aid to the guerrillas," and (2) provided no other evidence to suggest that the rape was motivated by a protected ground. The record in the present case is quite different. As explained above, the fact that the assault occurred in the context of her arrest based on imputed political opinion is evidence that the assault occurring during the arrest was motivated, at least in part, by the same ground. In addition, Rizvie testified repeatedly and consistently that her ethnicity was also a factor: (1) she was

threatened and sexually assaulted *because* she was Tamil; (2) her persecutor told her he could get away with persecuting her because she was Tamil suspected of being affiliated with the Tigers; and (3) Tamil women in similar circumstances were often assaulted with impunity. In this context, the sexual assault cannot be viewed as "simply a criminal act ... committed ... by a soldier [or other state officer]." *Garcia–Martinez v. Ashcroft,* 371 F.3d 1066, 1072 (9th Cir.2004); *see also Lazo–Majano v. INS,* 813 F.2d 1432, 1434 (9th Cir.1987) (rejecting Board's finding that the repeated rapes of the petitioner by an army sergeant were "strictly personal actions"). The Board also perfunctorily concluded that the officer was solely motivated by personal aggression; however, as the Ninth Circuit has pointed out, sexual violence in the context of civil strife is often not about sex, but instead about domination, intimidation, and control. *See Ali v. Ashcroft,* 394 F.3d 780, 787 (9th Cir.2005). Given the context of Rizvie's detention, the officer's own comments, and the situation in Sri Lanka, we conclude that the Board's finding that the officer's actions were "not motivated, even in part, by a protected ground" is based on significant errors.

■ Nor are the Board's concerns about other aspects of Rizvie's claim justified. The Board stated that it was "troubled" by the child's trip to Sri Lanka in 1998 and the fact that Rizvie's mother chose to return to Sri Lanka. First, "[t]he personal choices that an asylum applicant has made concerning marriage, children, and living arrangements should not be used to evaluate the applicant's credibility concerning his claims of persecution, unless they reflect some inconsistency in a relevant portion of the applicant's testimony." *Damaize–Job v. INS,* 787 F.2d 1332, 1337 (9th Cir.1986). While the Board correctly determined that the child's trip did

not "go to the heart of [Rizvie's past persecution] claim," it was not an appropriate basis for questioning the bona fides of her fear for her own safety in Sri Lanka. The fact that Rizvie would decide not to accompany her baby to meet his grandparents does not diminish the plausibility of her account; in fact, the choice could substantiate her personal fears of returning to Sri Lanka. Second, the fact that a family member who has also been threatened chooses to remain in the home country or not to apply for asylum should generally not be used to impugn an applicant's claim: an individual's decision "whether to leave one's friends, family, and country forever ... to seek asylum is a process that ... is personal, inscrutable, and dynamic," and not easily compared. *Pavlova v. INS*, 441 F.3d 82, 89 (2d Cir.2006). Thus, to the extent the Board's opinion suggests, for the foregoing reasons, that Rizvie no longer has a well-founded fear of future persecution, it is in error.[1]

The errors here noted were central to the Board's determination that Rizvie failed to establish past persecution on account of a protected ground.[2] We cannot predict with confidence that, applying the correct legal standards and addressing the complete factual record, the agency would again deny Rizvie's claim. Accordingly, remand is appropriate. *See Gjolaj*, 468 F.3d at 144.

## IV. CONCLUSION

Accordingly, Rizvie's petition for review is GRANTED, the Board's decision denying her claims for asylum and withholding of removal is VACATED, and the case is REMANDED for further proceedings consistent with this order. Having completed our review, the pending motion for a stay of removal in this petition is DENIED as moot.

---

1. Assuming, as we do, that Rizvie has established past persecution on a protected ground, on remand the government must overcome the rebuttable presumption that she has a well-founded fear of future persecution. *See Secaida–Rosales,* 331 F.3d at 306.

2. Rizvie did not clearly point out these specific errors in her brief. The errors, however, are directly related to the issue of whether or not she established past persecution on a protected ground. This issue was developed before the Immigration Judge and the Board, and was fully argued to us by the government. Under all the circumstances of this case, we can consider these errors in deciding this appeal. *See Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.,* 425 F.3d 126, 136–37 (2d Cir.2005).