BOGGS, Circuit Judge,
dissenting.
I concur with the majority’s well-reasoned discussion of the “preliminary issues” raised by the petitioner in this case. I believe that, despite the BIA’s imprecise articulation of the proper standard of review, it ultimately applied de novo review to the evidence before it. Moreover, I believe that it makes good sense in this ease to assume the petitioner’s testimony to have been credible, because none of the petitioner’s allegations with respect to facts undergirding the dispositive issues appear to have been discounted by the IJ or the BIA.
I write separately, however, to express my disagreement with the majority’s belief that it is compelled to conclude that the Algerian police’s actions in this case were motivated by Mohamed Haider’s imputed political opinions. Whereas the majority would hold that “suspected affiliation with an anti-government terrorist group consti *290 tute[s] imputed political opinion,” I find such a conclusion unsupportable.
We are required to give “deference to the BIA’s reasonable interpretation of the statutes and regulations” it enforces. Lin v. Holder, 565 F.3d 971, 976 (6th Cir.2009) (citing Chevron v. Natural Res. Def. Council, 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). While the BIA does not appear to have addressed itself to the precise question at hand, it is instructive to note that it has held that “persecution ... clearly contemplates that harm or suffering must be inflicted upon an individual in order to punish him for possessing a belief or characteristic a persecutor seeks to overcome.” In re Acosta, 19 I. & N. Dec. 211, 223 (BIA 1985), overruled on other grounds by In re Mogharrabi, 19 I. & N. Dec. 439 (BIA 1987). Such a “belief or characteristic” is clearly distinguishable from the action of committing or aiding acts of murder and mayhem. Those acts do not automatically become expressions of “political opinion” when they are committed by groups with political aims.
Furthermore, “refuge is restricted to individuals who are either unable by their own actions, or as a matter of conscience should not be required, to avoid persecution.” Acosta, 19 I. & N. Dec. at 234. Thus, the INA provides refuge for those persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion only to the extent that these beliefs or characteristics are beyond the control of the applicant or are of the kind that we believe “as a matter of conscience” that a petitioner ought not be required to change to avoid persecution.
Is affiliation with a terrorist group a “belief?” One cannot reasonably contend so. A terrorist group, as the name implies, is not defined by the political opinions it espouses but by its methods. Is it a “characteristic?” Perhaps, if one views a tendency to resort to violence as a political weapon as a “characteristic,” but in no event could such a tendency be described as one that a petitioner could not change, or should not be required to change. As the record in this case indicates, the GIA and its splinter groups were involved in active terrorist campaigns that targeted civilians; during the 1990s, they were part of a wave of terrorism that took the lives of more than 100,000 Algerians. The GIA’s methods were calculated to achieve its aims not through political discourse of the kind we should protect “as a matter of conscience,” but through indiscriminate violence and threats of violence designed to cause widespread chaos and fear that might permit them to bully their way into power.
The actions of the Algerian police, of course, may have been no better in this case than those of their enemies. If Mr. Haider’s testimony is to be believed, their humiliating attacks on him with little or no evidence of his connection to the GIA deserve to be condemned. While one may sympathize with Mr. Haider’s plight, however, victimization by arbitrary thuggishness is decidedly not a protected ground, and there is simply no evidence that the police abused him on account of his imputed political opinion, as opposed to their belief that he was affiliated with a group that — regardless of its politics — engaged in the murder of civilians in a quest for power.
The majority anticipates this argument in its footnote 9, but does not provide a convincing reply. In claiming that a distinction between political opinion and conduct “would be in tension” with case law, it points to one unpublished decision of this circuit (Abdulnoor v. Ashcroft, 107 Fed.Appx. 594 (6th Cir.2004)), a decision of the Ninth Circuit (Kumar v. Gonzales, 444 *291 F.3d 1043 (9th Cir.2006)), and a decision of the Second Circuit (Uwais v. United States Attorney General, 478 F.3d 513 (2d Cir.2007)). The decision in Abdulnoor, however, gives no indication whatsoever that the petitioner in the case was persecuted for his methods; while the Iraqi government linked him to an opposition group because weapons for which he was responsible ended up in that group’s hands, there is no evidence that Abdulnoor would not have been under the same threat if the group had been engaged in peaceful resistance. See Abdulnoor, 107 Fed.Appx. at 595. Given the situation in Iraq under Saddam Hussein, it is quite likely that any form of political opposition could have resulted in the sentence of death Abdulnoor found himself under, and the court certainly does not tell us differently. Thus, Abdulnoor cannot fairly be read to bar a distinction between a petitioner’s opinions and his conduct. To the extent that Kumar or Uwais may be read to hold differently, I disagree with them, though I note that the support they provide for the majority is shaky at best. The cited portion of Kumar addresses itself to the question of whether the petitioner’s imputed political opinion was sufficient to provide a nexus, and does not at all concern the opinion/method distinction. Kumar, 444 F.3d at 1053-54. Uwais involved a petitioner who was persecuted in large part because of her Tamil ethnicity and not just her alleged involvement with the group known as the Tamil Tigers — an important point because the court was reviewing a BIA finding that the persecution had not been even partly motivated by a protected ground, Uwais, 478 F.3d at 518, and the court in that case thus had no occasion to discuss the core argument here.
Curiously, the majority concludes that “[ejven if the conduct-opinion distinction were appropriate in some cases, it has no application here. The BIA explicitly found that the police abused Haider ‘because they believed that he was associated with the GIA’ — i.e., because of his imputed membership with a political organization.” This simply begs the question, however; whether Haider’s association with the GIA was, in the police’s eyes, an association with a political organization is precisely the issue under discussion. I find that a review of the evidence in this case produces sincere doubt as to that question, given that the Algerian police are not described as calling Haider a “dissident” or an “activist,” but rather, as the majority notes, a “terrorist.”[1] In ushering Haider through the golden door, the majority sets a dangerous precedent.
Accordingly, I respectfully dissent.[2]

. While the majority is doubtless correct that such a term can "carry a political valence,” Majority Opinion at 286 n. 9, there is no evidence in this case that it did. The very State Department report cited by the majority states that the GIA "launched terrorist campaigns against government figures and institutions to protest the banning of the Islamist parties.” Ibid. (emphases added). There is no suggestion in the record that Haider was singled out because the GIA "protested] the banning of the Islamist parties” rather than because it "launched terrorist campaigns.” Of course terrorism can be in aid of political goals- — -it usually is. When Josef Stalin masterminded bank robberies that left dozens dead, he did so to fund Lenin's nascent Bolshevik Party. See Simon Sebag Montefiore, Young Stalin 3-16 (Vintage Books 2008). When the Russian government sought to bring him to justice for those crimes, must we believe it did so on account of his political opinions, rather than because he was a murderer and a thief?

. Because I believe that the evidence does not compel the conclusion that Haider was *292 abused on account of a protected ground, I would not reach the question of whether those abuses constituted "persecution,” and I express no opinion on that matter.