Wu v. Holder
BIA
Hom, IJ
A201 035 128

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT
# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of August, two thousand fourteen.

PRESENT:
ROSEMARY S. POOLER,
BARRINGTON D. PARKER,
DEBRA ANN LIVINGSTON,
            *Circuit Judges.*

_____

QI CAO WU, a.k.a. CAO QI WU,
            *Petitioner*,

            v.                                    13-2851

                                                  NAC

ERIC H. HOLDER, JR., UNITED STATES
ATTORNEY GENERAL,
            *Respondent*.

_____

FOR PETITIONER:        Michael Brown, New York, New York.

FOR RESPONDENT:        Stuart F. Delery, Assistant Attorney General; David V. Bernal, Assistant Director; Jesse M. Bless, Trial Attorney, Civil Division, Office of Immigration Litigation, United States Department of Justice, Washington D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Qi Cao Wu, a native and citizen of China, seeks review of a July 11, 2013 or August 8, 2013 decision of the BIA affirming a June 14, 2011, decision of an Immigration Judge ("IJ") denying Wu's application for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). *In re Qi Cao Wu*, No. A201 035 128 (B.I.A. July 11, 2013), *aff'g* No. A201 035 128 (Immig. Ct. N.Y. City June 14, 2011). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the IJ's decision as modified by the BIA decision. *See Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). The applicable standards of review are well established. 8 U.S.C. § 1252(b)(4)(B); *see also Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

In the main, Wu argues that the evidence adduced at his merits hearing established that the police had mixed

motives: they beat and jailed him because he interfered with his mother's arrest, but also because he supported his mother's Falun Gong practice.

Wu applied for asylum in 2011; so, the REAL ID Act applies. REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 302 (2005) (codified at 8 U.S.C. § 1158(b)(1)(B)(iii)). That Act provides that an asylum "applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). In construing the "one central reason" standard, the BIA held that "the protected ground . . . cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *In re J-B-N & S-M*, 24 I. & N. Dec. 208, 214 (BIA 2007) (internal quotation marks omitted). This Court has upheld that analysis, explaining that the REAL ID Act "makes clear that mixed motives asylum claims continue to be viable." *Castro v. Holder*, 597 F.3d 93, 104 (2d Cir. 2010).

To prevail on such a claim, "an asylum applicant need not show with absolute certainty why the events occurred, but rather, only that the harm was motivated, in part, by an

3

actual or imputed protected ground." *Uwais v. U.S. Att'y Gen.*, 478 F.3d 513, 517 (2d Cir. 2007) (citing *Matter of S-P-*, 21 I. & N. Dec. 486, 494-95 (BIA 1996)). In evaluating motive in a case in which "prosecution for an offense may be a pretext for punishing an individual for his political opinion, . . . the evidence must be evaluated . . . to determine whether the motive for the abuse in the particular case was directed toward punishing or modifying perceived political views, as opposed to punishment for criminal acts . . . [or] was motivated by some other reason unrelated to asylum law." *Matter of S- P-*, 21 I. & N. Dec. at 493-94. "Evidence that punishment for a politically related act would be disproportionate to the crime would indicate persecution on grounds of political opinion rather than prosecution." *Id*. at 493.

Wu did not need to establish that he was persecuted "*solely* on account" of his support for Falun Gong. *Osorio v. I.N.S.*, 18 F.3d 1017, 1028 (2d Cir. 1994). He did, however, have the burden to "show that his persecutors actually imputed a political opinion to him." *Sangha v. INS*, 103 F.3d 1482, 1489 (9th Cir. 1997). The agency reasonably concluded that he failed to satisfy that burden. Nothing in the record suggested that the police suspected

4

that he supported Falun Gong. At the merits hearing, he testified that when the police arrived at the family home, they wanted to arrest his mother because "some had reported" her for practicing Falun Gong – *not* that anyone reported Wu for supporting Falun Gong. His written asylum application reported that while in jail "the police ferociously said I dared to assault the police, and they should execute me by shooting." Similarly, at the merits hearing he testified that his interrogators asked him why his mother practiced Falun Gong and who introduced her to the practice, but threatened him for having attacked the police – not for having supported his mother's Falun Gong practice. These threats and questions do not suggest that the police knew how Wu felt about Falun Gong and intended to arrest and beat him on that basis. Indeed, Wu conceded that it would be "correct to say the reason [he had] a conflict with the police is because . . . he attacked them." Moreover, Wu never claimed that his punishment (jail and a fine) was disproportionate to his crime (obstruction or resisting arrest). *See Matter of S- P-*, 21 I. & N. Dec. at 493. Given this record, the agency did not err in concluding that Wu failed to carry his burden of showing that the police imputed his mother's political opinion to him.

Because Wu failed to demonstrate past persecution based on a protected ground, he needed to show a well-founded fear that he would be persecuted if returned to China. *See* 8 C.F.R. § 1208.13(b). Wu argues that there is a "reasonable probability that he would be singled out by the Chinese authorities." His proof: he testified that his mother was persecuted for being a Falun Gong practitioner, and he now practices himself. The agency concluded that this was not enough to show a reasonable probability that the authorities "are either aware . . . or likely to become aware" of Wu's Falun Gong practice and persecute him as a result. *Hongsheng Leng v. Mukaskey*, 528 F.3d 135, 143 (2d Cir. 2008). That was not error. The authorities may have identified Wu's mother as a Falun Gong practitioner; but it would be "speculative at best" to infer that they will also identify Wu. *Jian Xing Huang v. INS*, 421 F.3d 125, 129 (2d Cir. 2005) (finding that a fear of future persecution is not objectively reasonable if it lacks "solid support" in the record and is merely "speculative at best").

Having reasonably found that Lin failed to establish eligibility for asylum, the agency did not err in denying withholding of removal and relief under the CAT, as these claims shared the same factual predicate. *See Paul v.*

6

*Gonzales*, 444 F.3d 148, 156-57 (2d Cir. 2006); *Yang v. U.S. Dep't of Justice*, 426 F.3d at 523.

For the foregoing reasons, the petition for review is DENIED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
