Castro-Escobar v. Lynch

BIA
Wright, IJ
A200 819 052

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT
## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of February, two thousand sixteen.

PRESENT:
　　　JOSÉ A. CABRANES,
　　　PETER W. HALL,
　　　GERARD E. LYNCH,
　　　　　*Circuit Judges.*

_____

ERWIN OTTONIEL CASTRO-ESCOBAR,
　　　*Petitioner,*

　　　v.　　　　　　　　　　　　　13-3047
　　　　　　　　　　　　　　　　　NAC

LORETTA E. LYNCH, UNITED STATES
ATTORNEY GENERAL,
　　　*Respondent.*

_____

FOR PETITIONER:　　　　Bruno Joseph Bembi, Hempstead, New York.

FOR RESPONDENT:　　　　Stuart F. Delery, Assistant Attorney General; Edward J. Duffy, Assistant Director; John M. McAdams, Trial Attorney, Civil Division, Office of Immigration Litigation, United States Department of Justice, Washington D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Erwin Ottoniel Castro-Escobar, a native and citizen of Guatemala, seeks review of a July 17, 2013, decision of the BIA affirming an August 15, 2012, decision of an Immigration Judge ("IJ") denying Castro-Escobar's application for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). *In re Erwin Ottoniel Castro-Escobar*, No. A200 819 052 (B.I.A. July 17, 2013), *aff'g* No. A200 819 052 (Immig. Ct. N.Y. City Aug. 15, 2012). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the IJ's decision as modified by the BIA decision. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). The applicable standards of review are well established. 8 U.S.C. § 1252(b)(4)(B); *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

In the main, Castro-Escobar argues that the evidence adduced at his merits hearing established that his attackers

beat him because he was a member of a particular social group made up of people opposed to gangs and gang violence. So, the argument goes, he established both past persecution and a well-founded fear of future persecution by the same bad actors.

Castro-Escobar applied for asylum in 2010, and so the REAL ID Act applies. 8 U.S.C. § 1158(b)(1)(B)(iii). That Act provides that an asylum "applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(I). In construing the "one central reason" standard, the BIA has held that "the protected ground . . . cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Matter of J-B-N & S-M*, 24 I. & N. Dec. 208, 214 (BIA 2007). We have upheld that analysis, explaining that the REAL ID Act "makes clear that mixed motives asylum claims continue to be viable." *Rodas Castro v. Holder*, 597 F.3d 93, 104 (2d Cir. 2010). To prevail on such a claim, "an asylum applicant need not show with absolute certainty why the events occurred, but rather, only that the harm was motivated, in part, by an actual or

3

imputed protected ground." *Uwais v. U.S. Att'y Gen.*, 478 F.3d 513, 517 (2d Cir. 2007) (citing *Matter of S-P-*, 21 I. & N. Dec. 486, 494-95 (BIA 1996)).

Castro-Escobar's applications for asylum and withholding suffered from two fatal flaws, one factual and one legal. Factually, the agency reasonably concluded that he failed to satisfy his burden of showing that his attack "was motivated, in part, by an actual or imputed protected ground." *Id*. Nothing in the record suggested that Castro-Escobar's attackers had any reason to suspect that he was opposed to gangs, gang violence or narcotics trafficking. To the contrary, Castro-Escobar testified that they threatened him with future pain if he did not stop seeing his girlfriend. On this record, the agency was well within its discretion to find that they "may have had only personal reasons for assaulting" Castro-Escobar.

Castro-Escobar's claim also failed on the law. He suggests that the INA should protect members of a particular social group made up of Guatemalans opposed to gangs and gang violence. The BIA has long defined the phrase "particular social group" to mean "a group of persons all of whom share a common, immutable characteristic," for example, "sex, color, or kinship ties, or in some circumstances it

4

might be a shared past experience such as former military leadership or land ownership." *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985). More recently, the agency clarified that "particularity and social distinction" are also required. *Matter of W-G-R-*, 26 I. & N. Dec. 208, 212 (BIA 2014). Particularity goes to "delineation": it requires that "terms used to describe the group have commonly accepted definitions in the society of which the group is a part," and that it is "discrete and [has] definable boundaries–it must not be amorphous, overbroad, diffuse, or subjective." *Id*. at 214. Social distinction "exists where the relevant society perceives, considers, or recognizes the group as a distinct social group." *Id.* at 217. "While the analysis of a particular social group claim is based on the evidence presented and is often a fact-specific inquiry, the ultimate determination whether a particular social group has been established is a question of law." *Id.* at 209-10.

Asylum seekers from Central and South American countries have long pressed for the recognition of particular social groups related to gangs and violence. The agency has rejected these claims. *See, e.g., id*. at 221 (holding that "'former members of the Mara 18 gang in El

5

Salvador who have renounced their gang membership' does not constitute a particular social group" because it "lacks particularity because it is too diffuse, as well as being too broad and subjective"); *Matter of S-E-G-*, 24 I. & N. Dec. 579, 586-88 (BIA 2008) (concluding that Salvadoran youths who resist gang recruitment are not a cognizable social group because they do not share recognizable and discrete attributes); *Matter of S-V-*, 22 I. & N. Dec. 1306, 1309-10 (BIA 2000) (holding that a group of Colombian citizens who feared kidnapping due to their wealth did not establish eligibility for asylum); *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985) holding that "being a taxi driver in San Salvador and refusing to participate in guerrilla-sponsored work stoppages" is not an immutable characteristic). We have likewise rejected such a claim. *Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007) (holding that the proposed social group of "affluent Guatemalans" "depends on no disadvantage other than purported visibility to criminals," so that "the scales are tipped away from considering those people a 'particular social group'").

Here, the agency rejected Castro-Escobar's putative particular social group made up of Guatemalans opposed to

6

gangs and gang violence. It reasoned that such a group "is too loosely defined to meet the requirement of particularity, inasmuch as the group would likely encompass a large portion of the Guatemalan society, and does not have the requisite social visibility." This conclusion is consistent with the agency's jurisprudence on particular social groups, and is sound. Castro-Escobar submitted a handful of news articles about gang violence in Guatemala. He fails, however, to explain how his putative social group could be delineated from the rest of law-abiding Guatemalan society (which presumably opposes gang violence as much as he does), or how that society could possibly recognize gang opponents as a "distinct social group." *Matter of W-G-R-*, 26 I. & N. Dec. at 217. Castro-Escobar therefore failed to demonstrate the requisite nexus to a protected ground, making the agency's rejection of his claims for asylum and withholding of removal appropriate.

Castro-Escobar challenges the denial of a discretionary grant of asylum for humanitarian reasons. That relief is available to an alien who has demonstrated past persecution but whose well-founded fear of future persecution has been rebutted by the government. 8 C.F.R. § 1208.13(b)(1)(iii)(A). The agency's finding that Castro-

7

Escobar did not suffer past persecution forecloses Castro-Escobar's claim.

The agency also reasonably rejected his application for CAT relief. The CAT's implementing regulations define torture as, among other things, "an extreme form of cruel and inhuman treatment." 8 C.F.R. § 208.18(a)(2). The agency did not err in concluding that Castro-Escobar's sole altercation, which required only one trip to the hospital, did not meet that standard. The only suggestion of government acquiescence was the fact that nothing came of the police report Castro-Escobar filed about the attack. In his brief to this Court, Castro-Escobar contends that "the police never completed an investigation." But before the IJ, he introduced a document stating that the prosecutor closed the case because Castro-Escobar could not identify his attackers. Consequently, the agency did not err in finding that Castro-Escobar failed to demonstrate the government involvement necessary for CAT relief.

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, and the motion for a stay of removal in this petition is DISMISSED as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8